**BBC ACQUISITION CORP., a New Jersey corporation, Plaintiff,**

v.

**DURR–FILLAUER MEDICAL, INC., a Delaware corporation, Defendant.**

**Civ. A. No. 12646.**

Court of Chancery of Delaware, New Castle County.

Submitted: Aug. 6, 1992.
Decided: Aug. 10, 1992.

Steven J. Rothschild and David J. Margules, of Skadden, Arps, Slate, Meagher & Flom, Wilmington, and Robert E. Zimet, of Skadden, Arps, Slate, Meagher & Flom, New York City, for plaintiff.

Jesse A. Finkelstein, Anne C. Foster, and Michael J. Feinstein, of Richards, Layton & Finger, Wilmington, William C. Sterling, Jr., Robert B. Mazur, Marc Wolinsky, and Lyon L. Roth, of Wachtell, Lipton, Rosen & Katz, New York City, and Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, AL, for defendant.

## OPINION

JACOBS, Vice Chancellor.

This is the decision of the Court after trial in an action to compel inspection of corporate books and records pursuant to 8 *Del.C.* § 220. For the reasons discussed below, judgment will be entered in favor of the defendant.

## I.

The facts are largely undisputed, but where disputed, they are as found herein. The plaintiff, BBC Acquisition Corp.

("BBC"), is a wholly-owned subsidiary of Bergen Brunswig Corporation ("Bergen"). BBC was formed as the corporate vehicle to implement Bergen's bid to acquire Durr–Fillauer Medical, Inc. ("Durr"), the defendant in this action. Durr had earlier entered into an agreement with another suitor, Cardinal Distribution, Inc. ("Cardinal"), for Cardinal to acquire Durr. The proposed Durr–Cardinal transaction contemplated a spinoff of certain of Durr's product divisions, and a sale of the remainder of Durr to Cardinal in a stock-for-stock merger.

Upon learning of the Cardinal transaction, Bergen, which is in the same business as Durr, decided to launch a competing bid to acquire Durr. Bergen took several steps in preparation. First, it formed BBC[1] and caused BBC to acquire 100 shares of Durr (and Cardinal) stock. Next, Bergen, through BBC, made a cash tender offer for all of Durr's outstanding shares (the "Tender Offer") at $26 per share—a price financially superior to the consideration then being offered by Cardinal. Third, Bergen (and BBC) brought a separate plenary action in this Court, claiming that Durr's board of directors had breached their fiduciary duty by dealing preferentially with Cardinal and by refusing to deal with Bergen, all to the detriment of Durr's stockholders.[2] Fourth, Bergen, through BBC, made a formal written demand on July 7, 1992, pursuant to § 220, to inspect Durr's shareholder list and certain of its books and records. Of relevance here is the final category of books and records enumerated in that demand, namely:

All information pertaining to the Agreement and Plan of Reorganization, dated June 2, 1992 (the "CDI Reorganization Agreement"), between [Durr] and [Cardinal], including, but not limited to, the exhibits and schedules thereto; and all such other books, documents and records of [Durr] which have been furnished to [Cardinal] in connection with the CDI Reorganization Agreement.

BBC's demand letter recited the following purposes:

to enable [BBC] to communicate with other holders of Common Stock on matters relevant to stockholders, including with respect to (a) the proposed transaction involving [Durr] and [Cardinal] (the "CDI Transaction") publicly announced by [Durr] on June 2, 1992 or alternatives thereto, (b) a possible solicitation of proxies or consents by [BBC] or any of its affiliates in connection with the proposed special meeting of [Durr's] stockholders for the purpose of voting with respect to the CDI Transaction or (c) the [Tender Offer], and [Durr's] response thereto. The purpose is also to enable [BBC] to evaluate its own shares, the Tender Offer and the CDI Transaction.

While it is out of chronological sequence, it is useful at this point to note that Durr never formally responded to BBC's books and records demand or to BBC's reiteration of that demand in subsequent correspondence. On July 16, 1992, nine days later, BBC filed this action. Ultimately, Durr did deliver its stock list and other related materials and certain other documents to BBC. However, Durr has refused to permit BBC to inspect the books, records, and other documents that Durr previously "furnished to [Cardinal] in connection with the CDI Reorganization Agreement," which include documents of a highly confidential nature. It is those records that form the crux of this controversy.

After BBC submitted its § 220 demand, Bergen's Chairman wrote letters to Durr, reiterating Bergen's desire to negotiate an acquisition and its need for access to the same information Durr had previously supplied to Cardinal. Durr rebuffed Bergen's overtures, and instead proceeded to negoti-

---

1. BBC was originally formed under the name "MILN Corporation," which was later changed to "BBC Acquisition Corp.".

2. That plenary action is captioned *Bergen Brunswig Corporation and BBC Acquisition Corp. v. Durr–Fillauer Medical, Inc., et al.,* Civil Action No. 12631. In that action, Bergen has requested, *inter alia,* a preliminary injunction and an order directing Durr to produce the same books, records, and other documents that are the subject of this summary proceeding under 8 *Del.C.* § 220.

ate an improved merger transaction with Cardinal after Cardinal had advised Durr (in response to BBC's Tender Offer) that it was willing to "sweeten" its proposed offering price.

On July 17, 1992, the day after BBC filed this action, Durr and Cardinal entered into, and publicly announced, a revised merger agreement wherein Durr's stockholders will receive increased consideration in the stock-for-stock merger (assuming they approve it). Although the value of that consideration is disputed, Durr claims that the revised transaction is worth $30.50 per share in Cardinal stock—$55 million more than what BBC is presently offering. BBC concedes that the transaction value, whatever it may be, is superior to its present $26 per share Tender Offer price.

To date, BBC has not increased its offering price. Rather, BBC has taken the position that, to decide whether to increase its bid, it must first be afforded access to the same nonpublic information that Durr earlier provided to Cardinal. That information, BBC claims, is essential to enable it to determine the target company's worth.[3] Since Durr would not voluntarily permit such access, BBC elected to prosecute this § 220 action. Thereafter, the parties engaged in expedited discovery and submitted pretrial briefs, and the matter was tried on August 6, 1992.

## II.

No one disputes the basic legal principles applicable in proceedings under 8 *Del.C.* § 220 to compel corporate books and records other than a corporate stock list or stock ledger. A stockholder is entitled to:

inspect for any proper purpose the corporation's stock ledger, a list of its stockholders, and its other books and records, and to make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder....

8 *Del.C.* § 220(b).

Where the stockholder seeks to inspect the corporation's books and records other than its stock ledger or stock list, he must first establish "(1) that he has complied with the provisions of [§ 220] respecting the form and manner of making demand for inspection of such documents; and (2) that the inspection he seeks is for a proper purpose." 8 *Del.C.* § 220(c). Thus, when seeking inspection of books and records other than the corporate stock ledger or stock list, a shareholder has the burden of proving that his purpose is proper. Since such a shareholder will often have more than one purpose, that requirement has been construed to mean that the shareholder's *primary* purpose must be proper; any *secondary* purpose, whether proper or not, is irrelevant. *CM & M Group, Inc. v. Carroll*, Del.Supr., 453 A.2d 788, 792 (1982); *Helmsman Management Services, Inc. v. A & S Consultants, Inc.*, Del.Ch., 525 A.2d 160, 164 (1987).

A petitioning stockholder who has complied with the statute's procedural requirements and who has satisfactorily proved a proper purpose for the requested inspection will have demonstrated his entitlement to inspection. However, that entitlement is not open-ended; it is restricted to inspection of the books and records needed to perform the task. Accordingly, inspection is limited to those documents that are necessary, essential, and sufficient for the shareholders' purpose. *Petition of B & F Towing and Salvage Co.*, Del.Supr.,

---

**3.** The revised Durr–Cardinal merger agreement contains a provision prohibiting Durr from negotiating with, or furnishing corporate books and records to, a competing bidder such as BBC, *unless* Durr receives a written proposal relating to a competing transaction which, in the written opinion of Durr's counsel, the Durr board is required by principles of fiduciary duty to consider. Durr argues that BBC, by refusing to raise its bid, has refused to take the steps necessary to obtain the requested documents by invoking this "fiduciary out" provision. BBC responds that it has a statutory right to that information that cannot be abridged by private actions or agreements of the corporation. BBC also contends that Durr's position bespeaks hypocrisy, since the original Durr–Cardinal agreement contained a similar provision, yet Durr never even requested its counsel to opine on whether the board had a fiduciary duty to furnish the requested information during the period in which BBC's tender offer price was over 15% higher than the original Durr–Cardinal merger price.

551 A.2d 45, 51 (1988); *Helmsman Management Services, Inc.*, 525 A.2d at 167. That limitation on the scope of inspection is a corollary to a broader policy which recognizes that the Court is "empowered to protect the corporation's legitimate interests and to prevent possible abuse of the shareholder's right of inspection by placing such reasonable restrictions and limitations as it deems proper on the exercise of the right." *CM & M Group, Inc.*, 453 A.2d at 793–794 (*quoted in B & F Towing*, 551 A.2d at 51, n. 7).

This recitation of legal principles sets the stage for the array of defenses that Durr has interposed in support of its denial to BBC of access to its documents. Durr contends that BBC is not entitled to inspect those documents because: (i) BBC has not established that it has made a proper demand under oath, since it did not produce the signatory of the demand as a deposition or trial witness to testify that he signed the demand in the presence of a notary; (ii) BBC did not establish its status as a stockholder of record, since the certificate for 100 Durr shares was issued to "MILN Corporation", and BBC failed to prove that MILN and BBC are one and the same entity; (iii) BBC has not established a proper stockholder purpose, since BBC's true (and primary) purpose is to determine whether to reprice or restructure the Tender Offer, which purpose is not cognizable under § 220; (iv) insofar as it is claimed that the requested inspection is needed to value BBC's shares, the documents enumerated in the demand are unnecessary for that purpose, since Durr is a public company and publicly-filed information is sufficient; (v) even if BBC were otherwise entitled to inspect those documents, relief should be denied to BBC because it is a direct competitor of Durr, and to permit BBC to inspect highly confidential Durr documents would strategically disadvantage Durr and disserve Durr's best interests; and (vi) in any event, no inspection should be ordered unless and until BBC increases its offering price to a level such as would impose upon Durr's board of directors a fiduciary duty to permit inspection, as the "fiduciary out" clause in the Durr–Cardinal agreement contemplates. (*See* p. 88, n. 3, *supra*.)

## III.

To resolve this controversy, the Court need not address any of Durr's defenses other than its third defense (relating to the propriety of BBC's purpose for seeking inspection). Nonetheless, it addresses those other defenses here both for completeness and to provide such future guidance as might be thought useful. The single defense that is pivotal—the "purpose" defense—is treated in Part IV, *infra*, of this Opinion.

 For the following reasons, Durr's first and second defenses are without merit. First, Durr is correct in arguing that in cases where the corporation insists upon strict proof of the petitioning stockholder's compliance with the statutory formalities, it has been customary for the plaintiff shareholder to establish the demand's authenticity by calling as a trial witness the person who executed the demand. However, what may be customary, or even preferable, is not necessarily legally mandated. So long as other competent evidence is presented to establish that a statutorily proper demand was made, the testimony of the signatory is not a *sine qua non*. In this case, BBC's witness was a BBC corporate officer whose testimony I find credible. That witness testified that he was familiar with and recognized the signature of another BBC officer whose signature appears on the demand. Moreover, insofar as Durr seriously disputes the genuineness of the notarization, BBC's demand is, in this respect, self-authenticating. *See* Rules 901(b)(1) and 902(8) of the Delaware Uniform Rules of Evidence. In addition, after Durr's counsel advanced the argument (apparently for the first time) at trial that BBC was not a stockholder of record, BBC introduced into evidence an officially-filed certificate which established that MILN Corporation had changed its name to BBC Acquisition Corp.

 Equally unpersuasive as bases for barring relief under § 220 are Durr's

fourth and sixth defenses. Without question the sought-after documents were needed by Cardinal to determine Durr's value and, as a consequence, the price Cardinal was willing to pay to acquire Durr. At the trial Durr's President and Chief Operating Officer conceded that Cardinal needed those documents—all nonpublic—for that purpose. That being the case, Durr cannot credibly argue that those same documents are not necessary for a competitive bidder that is identically situated (BBC), or that BBC must be relegated to inspecting publicly-filed documents when Cardinal was not so limited. Thus, if BBC were found to be otherwise entitled to inspect the requested documents, that defense would pose no obstacle.

 Nor, in such event, would Durr fare any better in its argument that inspection should be conditioned upon BBC's compliance with the "fiduciary out" clause of the Durr–Cardinal agreement. The shareholders' right of inspection can only be taken away by statutory enactment. *Rainbow Navigation, Inc. v. Pan Ocean Navigation, Inc.*, Del.Supr., 535 A.2d 1357, 1359 (1987). It therefore cannot be abridged or abrogated by an act of the corporation. *Id.* (*citing State ex rel. Cochran v. Penn–Beaver Oil Co.*, Del.Supr., 143 A. 257 (1926)). Accordingly, whatever relevance the Durr–Cardinal agreement might have in determining BBC's right to discover that information in the companion plenary action, in this summary proceeding under § 220 (again assuming that BBC were found to have otherwise established its statutory entitlement to inspection) Durr could not be permitted to interpose its agreement with Cardinal to abridge BBC's entitlement.

 As for Durr's defense that inspection relief should be denied because BBC is a business competitor, that fact alone, without more, does not defeat the statutory right of inspection. *E.L. Bruce Co. v. State*, Del.Supr., 144 A.2d 533, 534 (1958); *SafeCard Services, Inc. v. Credit Card Service Corp.*, Del.Ch., C.A. No. 6426, Walsh, V.C., Ltr.Op. at 7, 1984 WL 8265 (Sept. 5, 1984). Moreover, BBC is willing to inspect the documents subject to executing a confidentiality agreement comparable to (and, according to BBC, in some respects more restrictive than) the confidentiality agreement executed by Cardinal, which is also a competitor of Durr in certain markets. Durr asserts, but has not persuasively demonstrated, that a confidentiality agreement will not afford it sufficient protection.

It is not necessary, however, to resolve that dispute at this time, because it relates only to the *scope* of inspection. That issue arises only if the shareholder is first found to be *entitled* to inspection. Because I conclude, for the reasons discussed below, that BBC has not established its entitlement to inspect the Durr documents, and because the confidentiality issue will most likely have to be resolved in the plenary action wherein BBC seeks discovery of those same documents on the basis of fiduciary principles, prudence dictates deferring any ruling on that question until such a ruling becomes appropriate (if at all) in that separate (and quite distinct) proceeding.

## IV.

 The pivotal question in this case is whether BBC has established a proper purpose. I conclude that it has not.

Although BBC's demand states several purposes, BBC places heaviest (if not exclusive) emphasis upon two of those purposes: (i) to value its own shares of Durr, and (ii) to communicate with other Durr shareholders concerning BBC's Tender Offer or a "possible solicitation of proxies or consents" in connection with a Durr shareholders' meeting proposed to approve the Durr–Cardinal transaction. The evidence overwhelmingly establishes, and I find as fact, that despite the several purposes recited in its demand, BBC has one primary purpose for inspecting the nonpublic information previously furnished to Cardinal: to place a value on Durr so that BBC can consider whether to increase its offering price and, if so, by how much. BBC's other stated purposes, to the extent they have independent reality, are clearly secondary and sub-

ordinate. I further conclude, as a matter of law, that in these particular circumstances BBC's primary purpose is not one "reasonably related to [BBC's] interest as a shareholder," and is therefore not a "proper purpose" within the meaning of § 220.

The relevant correspondence introduced at trial, as well as the testimony of BBC's trial witness, made it indisputably clear that BBC needs the requested nonpublic documents to determine what Durr is worth, at least to BBC. Armed with that information, BBC will then be in a position to decide what course of action to take; *e.g.*, increase its Tender Offer; solicit proxies either in conjunction with, or as an alternative to, a revised offer; or abandon the takeover effort altogether.

BBC does not deny these facts. Rather, it attempts to build two arguments around them. BBC's first argument is that each of the purposes enumerated in its demand is an independent, proper purpose of statute equal to the others. BBC's second argument (made in the alternative) is that even if valuing Durr is found to be BBC's primary purpose, it is still "proper" under § 220. That is because (BBC claims) its purpose is to value *BBC's stock interest* in Durr which, as Delaware courts have held, relates to an investor's interest as a shareholder. *See, e.g., CM & M Group, Inc.*, 453 A.2d at 792; *Helmsman Management Services, Inc.*, 525 A.2d at 165; *Radwick Pty. Ltd. v. Medical Inc.*, Del.Ch., C.A. No. 7610, Berger, V.C., Slip Op. at 6, 1984 WL 8264 (Nov. 7, 1984).

Neither argument, in my view, is meritorious. As earlier noted, the primary purpose of the sought-after inspection is to value Durr. The remaining purposes are simply consequences of that valuation purpose, that is, they relate to possible courses of action that BBC might or might not follow, depending upon the results of that valuation. Those other purposes do not, therefore, stand on the same independent and equal footing as the valuation purpose; they are secondary to it.

Nor does the Court find persuasive BBC's effort to shoehorn its "valuation-of-shares" purpose into a legally-recognized category into which it simply does not fit. BBC owns only 100 shares, for which it paid approximately $2,250. The purpose of BBC's proposed inspection is *not* to place a value on those 100 shares, whose cost is trifling in relation to the cost of this litigation (or to the over $300 million cost of acquiring Durr, at $26 per share). Rather, BBC's purpose is to place a value on Durr itself, and BBC's 100 share interest is irrelevant to that quest except insofar as it provides a legal vehicle which enables BBC to embark upon it.

BBC's nominal stock interest is not what this inspection dispute is about. This is not a case where an investor in a nonpublicly-held corporation needs to inspect corporate books and records to value his investment in order to determine how to protect or preserve it, *viz.*, whether to sell his shares, buy more shares (or possibly seek control), or take some other course of action. In that circumstance there is reality to a petitioning shareholder's contention that he needs to value his stock interest in the corporation because that interest (however large or small it might be) and its preservation are of real significance to him. In that situation, and in others where that reality drives the valuation purpose, § 220 relief is available to aid shareholders who demonstrates their entitlement to it.

That is not this case. BBC's characterization of its purpose as being one of valuing its interest in Durr obscures what truly is going on here. To repeat, BBC is not seeking to value its 100 shares of Durr, but Durr as a whole. For purposes of § 220, the chasm between those two purposes is fatally unbridgeable: valuing a stockholder's interest in the corporation is a proper purpose. Valuing the corporation for the sole purpose of acquiring it, unrelated and without regard to the acquiror's particular and pre-existing investment in the corporation, is not. In terms of the present case, that latter purpose relates only to BBC's status as a bidder for Durr, not to its status as a Durr stockholder. Section 220 is intended to serve shareholders whose need for inspection is truly related to their

stock interest. BBC is not such a stockholder.

\* \* \*

That is not to suggest that given a proper showing, BBC might not be found entitled to inspection relief in its companion plenary action.[4] All I hold is that BBC is not entitled to that relief in a proceeding under 8 *Del.C.* § 220. For these reasons, judgment shall be entered in favor of the defendant and the complaint shall be dismissed. IT IS SO ORDERED.

---

**4.** Nor should this ruling be read to imply that BBC would not be entitled to inspect Durr's stock list, had that been the issue. BBC's purpose for seeking inspection of the stock list, namely, to communicate with other shareholders concerning its Tender Offer, was quite distinct from its purpose in seeking inspection of Durr's books and records. Clearly that former purpose was a proper one, which presumably was why Durr ultimately supplied the stock list-related information to BBC.