La Juez Asociada Señora Rodríguez Rodríguez
emitió la opi-nión del Tribunal.
En esta ocasión nos corresponde examinar si, para efec-tos del Artículo 7.10 de la Ley General de Corporaciones de *1010 Puerto Rico (Ley de Corporaciones), Ley Núm. 164 de 16 de diciembre de 2009 (14 LPRA see. 3650), constituye un pro-pósito válido conocer y evaluar las determinaciones toma-das por la Junta de Directores para establecer cómo se están administrando los fondos de la corporación mensual-mente. De contestar esta interrogante en la negativa, de-bemos analizar si los estatutos de una corporación pueden conceder a los accionistas el derecho a inspeccionar los li-bros y cuentas de la corporación sin requerirles un propó-sito válido.
Pasemos entonces a resumir los hechos que sirven de trasfondo a la controversia ante nuestra consideración.
I — I
Calidad de Vida Vecinal, Inc. (Calidad de Vida) es una corporación sin fines de lucro que administra la Urbaniza-ción Ocean Park en San Juan y se encarga, entre otras cosas, de cobrar cuotas de mantenimiento, contratar la se-guridad privada de la comunidad y vigilar que los residen-tes cumplan con las normas establecidas. La Sra. Elsie Herger Pacheco es propietaria de un inmueble ubicado en la Urbanización Ocean Park y miembro de Calidad de Vida. El 29 de septiembre de 2011 la señora Herger Pacheco juramentó un requerimiento mediante el cual le so-licitaba a Calidad de Vida permiso para “la inspección y producción de los documentos, actas, resoluciones, minu-tas, (1) libros corporativos, estados financieros, estados de cuenta, certificado de incorporación y ‘By-Laws’ de la corporación”. Además, solicitó un listado sobre cualquier demanda o querella presentada por la corporación ante tri *1011 bunales y agencias estatales o federales. Apéndice, pág. 62. Alegó como propósito válido para la inspección, “conocer y evaluar adecuadamente las determinaciones tomadas por la Junta de Calidad de Vida Vecinal al igual que establecer c[ó]mo se están administrando los fondos pagados por los miembros de dicha entidad mensualmente”. íd. Funda-mentó la solicitud de los documentos en el Artículo 7.10 de la Ley de Corporaciones, supra.
Calidad de Vida se opuso a la petición presentada por la señora Herger Pacheco y señaló que no podía cumplir con el requerimiento, ya que el mismo debía ser más específico sobre qué documentos la señora Herger Pacheco deseaba inspeccionar. En contestación, la señora Herger Pacheco sostuvo que limitaba su solicitud a los años 2005 a 2011. Calidad de Vida se opuso nuevamente a la petición. Alegó en esta ocasión, que la señora Herger Pacheco no tenía derecho a toda la documentación solicitada porque era miembro de Calidad de Vida desde agosto de 2011. Tam-bién indicó que cualquier solicitud de documentos debía cumplir con las Reglas de Procedimiento Civil porque la acción presentada por Calidad de Vida contra Hostería del Mar, hotel en el cual la señora Herger Pacheco tiene un interés propietario, aún estaba ante los tribunales. La se-ñora Herger Pacheco respondió que llevaba más de 10 años como miembro de Calidad de Vida y que el requerimiento no tenía relación alguna con el pleito contra Hostería del Mar, en el cual ella no era parte. A su vez, pendiente el requerimiento de la señora Herger Pacheco, el 19 de octu-bre de 2011 la Sra. Anabel Hernández Circuns, miembro de Calidad de Vida, juramentó un requerimiento idéntico al presentado por la señora Herger Pacheco.(2) Apéndice, pág. 81.
En vista de que Calidad de Vida no cumplió con los re- *1012 querimientos presentados, el 22 de noviembre de 2011 la señora Herger Pacheco y la señora Hernández Circuns pre-sentaron una demanda contra Calidad de Vida mediante la cual solicitaron al Tribunal de Primera Instancia que emi-tiera una orden para la inspección y producción de los do-cumentos requeridos. Alegaron que la denegatoria injusti-ficada de Calidad de Vida iba en contravención a lo dispuesto en el Artículo 7.10 de la Ley de Corporaciones, supra, y en el Artículo VIII del Reglamento de Calidad de Vida.(3) Por su parte, en su contestación a la demanda, Calidad de Vida argumentó que las demandantes no te-nían un propósito válido según lo requiere el Artículo 7.10, supra, y que el único propósito era hostigar a la corpora-ción para que desistiera del pleito contra Hostería del Mar. Posteriormente, mientras se dilucidaba la controversia en el Tribunal de Primera Instancia, la Sra. Margarita Ostolaza Bey, miembro de Calidad de Vida, presentó una moción de acumulación de parte. Alegó estar en la misma po-sición que la señora Herger Pacheco y la señora Hernández Circuns al haberle entregado a Calidad de Vida el 9 de noviembre de 2011 un requerimiento jurado idéntico al presentado por las demandantes. Apéndice, pág. 111.
Luego de varios trámites procesales, el 4 de junio de 2012, el Tribunal de Primera Instancia emitió una senten-cia en la cual permitió la acumulación de parte pero de-claró “no ha lugar” la demanda presentada. El foro prima-rio fundamentó su determinación en que la señora Herger Pacheco, la señora Hernández Circuns y la señora Osto-laza Bey (demandantes) no tenían un propósito válido de-bido a que el propósito primordial de éstas era satisfacer *1013 su curiosidad y embarcarse en una expedición de pesca.(4) Además, indicó que la solicitud de la señora Herger Pacheco aparentaba tener el propósito de hostigar a Calidad de Vida por ésta haber solicitado el cierre del hotel Hoste-ría del Mar. Con respecto al Artículo VIII del Reglamento de Calidad de Vida el Tribunal determinó, entre otras co-sas, que éste sólo proveía para una inspección limitada a lo allí dispuesto.
Insatisfechas, el 9 de julio de 2012 las demandantes pre-sentaron un recurso ante el Tribunal de Apelaciones. Ale-garon que el Tribunal de Primera Instancia había errado al determinar que carecían de un propósito válido que justi-ficara la inspección solicitada y al concluir que el Artículo VIII del Reglamento de Calidad de Vida no tenía la exten-sión que éstas alegaron. El 28 de septiembre de 2012 el Tribunal de Apelaciones confirmó la determinación del foro primario respecto a la falta de propósito válido de las de-mandantes e indicó que los requerimientos fueron excesi-vamente vagos e imprecisos y no estaban razonablemente conectados con el interés de las accionistas. Además, ex-presó que, independientemente del lenguaje amplio del re-glamento, cualquier requerimiento de información corpo-rativa tenía que cumplir con el propósito válido que exige el Artículo 7.10, supra.
Inconformes con tal determinación, las demandantes presentaron ante este Tribunal un recurso de certiorari mediante el cual nos solicitan que revoquemos la sentencia emitida por el foro apelativo intermedio. En el recurso pre-sentado alegan que el Tribunal de Apelaciones erró al de-terminar que los requerimientos presentados por éstas ca-recían de un propósito válido. A su vez, sostienen que el foro apelativo intermedio erró al determinar que el Artí-culo VIII del Reglamento está supeditado al requisito de *1014 propósito válido del Artículo 7.10, supra, y que sólo se re-fiere a las actas y a los estados financieros que ya fueron entregados.(5)
Planteada así la controversia, expedimos el auto solicitado. Con el beneficio de la comparecencia de las par-tes, procedemos a resolver.
II
La controversia de autos nos invita a examinar el Artículo 7.10, supra, y el Artículo 1.08 (14 LPRA sec. 3508), de la Ley de Corporaciones para determinar si en este caso las demandantes tienen derecho a inspeccionar los libros y cuentas de la corporación.
A
 En nuestro ordenamiento se ha reconocido que los accionistas de una corporación tienen un derecho a inspec-cionar los libros y cuentas de la misma. Este derecho se fundamenta en que los accionistas, al ser los dueños de la corporación, tienen derecho a proteger sus intereses y a poder investigar cómo se está manejando la corporación cuando sea necesario. Véase, i.e., Seinfeld v. Verizon Communications, Inc., 909 A.2d 117, 119 (2006). Esto es, “para asegurar la responsabilidad (‘accountability’) de la geren-cia corporativa a sus accionistas”. C.E. Díaz Olivo, Corporaciones, 2da ed., San Juan, Publicaciones Puertorriqueñas, 2005, pág. 225.
*1015 En la Ley de Corporaciones este derecho está regulado por el Artículo 7.10, supra. En específico, este artículo establece el derecho de los accionistas a examinar y fotocopiar el registro de acciones, la relación de accionistas y los demás libros de la corporación mediante un requerimiento jurado.(6) Además, dispone que cuando el accionista procure inspeccionar los libros y cuentas de la corporación debe demostrar que: (1) es un accionista; (2) ha hecho el requerimiento según exige la ley, y (3) que la inspección que procura es para un propósito válido. íd. Para efectos de la ley, “propósito válido” se define como “un propósito que se relacione razonablemente con el interés de la persona *1016 como accionista”. íd. Asimismo, la ley establece que, en caso de que la corporación no permita la inspección solici-tada, el accionista puede recurrir al Tribunal de Primera Instancia y éste tiene jurisdicción exclusiva para determi-nar si el accionista tiene derecho o no al examen solicitado. íd.
B
Explicado lo anterior, el presente caso requiere que analicemos el propósito válido que exige el Artículo 7.10, supra. Lo primero que debemos señalar es que la Asamblea Legislativa utilizó como modelo la Ley General de Corporaciones del estado de Delaware, 8 Del. C. Sec. 101 et seq., al promulgar nuestra Ley de Corporaciones. Exposición de Motivos de la Ley Núm. 164 de 16 de diciembre de 2009. Por tal razón, en ocasiones anteriores hemos recurrido a la jurisprudencia del estado de Delaware en materia de derecho de corporaciones como referencia para la resolución de controversias en nuestro ordenamiento. Recientemente en Domenech v. Integration Corp. et al., 187 DPR 595 (2013), utilizamos esta jurisprudencia para resolver una controversia relacionada al derecho de inspección de los accionistas de una corporación.(7) Por lo tanto, examinamos el Artículo 220, 8 Del. C. see. 220,(8) de la Ley de Corporaciones *1017 de Delaware por ser éste el que regula el derecho a inspección de los accionistas.(9)
En Domenech expresamos que, al igual que en nuestro Artículo 7.10, supra el Artículo 220 de la Ley de Corporaciones de Delaware requiere un propósito válido y lo define como “a purpose reasonably related to such person’s interest as a stockholder”. 8 Del. C. Sec. 220. A base de lo anterior, determinamos que el derecho a inspección no es absoluto, debido a que “el propósito válido no puede ser adverso a los intereses de la corporación”. Domenech, supra, pág. 617, haciendo referencia a Compaq Computer Corp. v. Horton, 631 A.2d 1, 4 (1993). A su vez, indicamos que una vez el solicitante demuestra que es accionista y que tiene un propósito válido, cualquier otro *1018 propósito secundario es irrelevante. Íd., págs. 617-618, haciendo referencia a Northwest Industries, Inc. v. B.F. Goodrich Co., 260 A.2d 428, 429 (1969) y General Time Corp. v. Talley Industries, Inc., 240 A.2d 755 (1968). A esto se añade que, como resultado, si la corporación se opone al requerimiento demostrando que el accionista tiene un propósito ulterior impropio, eso no es suficiente. Pershing Square, L.P v. Ceridian Corp., 2d 810, 817 (2007). En estos casos, la corporación debe demostrar que el propósito alegado es un pretexto y que el verdadero propósito no es válido según la Ley de Corporaciones. Íd.
También expresamos que constituyen propósitos válidos: determinar el valor de las acciones de una corporación, “particularmente en las corporaciones de individuos, cuyas acciones no están sujetas a venta pública”; determinar si una corporación tiene la capacidad de pagar dividendos, y calcular bonos de producción. Domenech, supra, pág. 61, haciendo referencia a CM & M Group, Inc. v. Carroll, 453 A.2d 788, 792—793 (1982), y Helmsman Management Services, Inc. v. A & S Consultants, Inc., 525 A.2d 160, 165 (1987).
Por su parte, la existencia de un propósito válido o la falta del mismo es una cuestión de hecho y se determina caso a caso. CM & M Group, Inc. v. Carroll, supra, pág. 792; Helmsman Management Services, Inc. v. A & S Consultants, Inc., supra, pág. 164.
Cuando se solicita la inspección de los libros y cuentas, el accionista tiene el peso de la prueba de demostrar que el propósito que alega es válido, por lo tanto, “[m]erely stating that one has a proper purpose, however, is necessarily insufficient”. Melzer v. CNET Networks, Inc., 934 A.2d 912, 917 (2007). Para ilustrar lo anterior, cuando se alega como propósito válido investigar transacciones impropias o mala administración, el Tribunal Supremo de Delaware ha requerido que el accionista demuestre, mediante preponderancia de la prueba, que tiene una base *1019 razonable para creer que la corporación está siendo mal administrada. En lo pertinente, expresó que:
A stockholder is “not required to prove by a preponderance of the evidence that waste and [mis] management are actually occurring”. Stockholders need only show, by a preponderance of the evidence, a credible basis from which the Court of Chancery can infer there is possible mismanagement that would warrant further investigation — a showing that “may ultimately fall well short of demonstrating that anything wrong occurred”. That “threshold may be satisfied by a credible showing, through documents, logic, testimony or otherwise, that there are legitimate issues of wrongdoing”.
Although the threshold for a stockholder in a section 220 proceeding is not insubstantial, the “credible basis” standard sets the lowest possible burden of proof. The only way to reduce the burden of proof further would be to eliminate any requirement that a stockholder show some evidence of possible wrongdoing. That would be tantamount to permitting inspection based on the “mere suspicion” standard that Seinfeld advances in this appeal. However, such a standard has been repeatedly rejected as a basis to justify the enterprise cost of an inspection.
........
We remain convinced that the rights of stockholders and the interests of the corporation in a section 220 proceeding are properly balanced by requiring a stockholder to show “some evidence of possible mismanagement as would warrant further investigation.” The “credible basis” standard maximizes stockholder value by limiting the range of permitted stockholder inspections to those that might have merit. (Escolios omitidos). Seinfeld v. Verizon Communications, Inc., supra, págs. 123 y 125.
En estos casos se exige alguna prueba que coloque al tribunal en posición de determinar si existe o no un propó-sito válido, manteniendo así un balance entre el derecho de los accionistas y los mejores intereses de la corporación.
Otro propósito que se ha considerado válido es la clarificación de discrepancias en los estados financieros de la corporación. State ex rel. Miller v. Loft, Inc., 156 A. 170 (1931). Véase, además, Díaz Olivo, op. cit., pág. 227. Por otro lado, se ha resuelto que no son propósitos válidos *1020 la mera curiosidad o iniciar un litigio para hostigar a la corporación. Compaq Computer Corp., supra, pág. 5. Véase, además, Díaz Olivo, op. cit, pág. 227.
Ahora bien, una vez el accionista demuestra que tiene un propósito válido, eso no significa que tiene derecho a ver todos los libros y cuentas de la corporación. Este podrá inspeccionar los documentos que sean necesarios para lograr su propósito. Es decir,
[a] petitioning stockholder who has complied with the statute’s procedural requirements and who has satisfactorily proved a proper purpose for the requested inspection will have demonstrated his entitlement to inspection. However, that entitlement is not open-ended; it is restricted to inspection of the books and records needed to perform the task. Accordingly, inspection is limited to those documents that are necessary, essential, and sufficient for the shareholders’ purpose. (Citas omitidas). BBC Acquisition Corp. v. Durr-Fillauer Medical, Inc., 623 A.2d 85, 88 (1992).
c
Por su parte, los estatutos corporativos establecen la manera en que una corporación deberá operar. Díaz Olivo, op. cit., pág. 46. Es decir, “son el reglamento interno de la corporación” y se utilizan para establecer normas específicas y, de ser convenientes, autolimitantes para el funcionamiento de la corporación. Id. En el caso de Puerto Rico, el Artículo 1.08 de la Ley de Corporaciones, supra,(10) *1021 regula lo relacionado a los estatutos de una corporación. Allí se dispone que los estatutos no pueden ser contrarios a la ley, la política pública, ni a lo establecido en el certificado de incorporación. 14 LPRA sec. 3508. Véase, además, Díaz Olivo, op. cit., págs. 46-47. Éstos pueden contener disposiciones referentes a los negocios de la corporación, a la marcha de sus asuntos, y a los derechos o poderes de la corporación o de sus accionistas, directores, oficiales o empleados. 14 LPRA see. 3508.
Por ejemplo, de ordinario, en los estatutos se establecen
[...] las fechas y la manera de convocar a las reuniones, el quorum requerido para éstas, las posiciones directivas que ha-brá en la empresa, la manera de seleccionar y separar de sus cargos a las personas, los requisitos para tales cargos, su tér-mino de duración y cualquier otro asunto que se entienda per-tinente sobre los negocios y la operación interna de la corporación. Díaz Olivo, op. cit., pág. 46.
Ahora bien, los estatutos de la corporación no pueden prohibir el derecho a inspección o hacer el requerimiento más oneroso. No obstante, nada impide que una corporación por medio de sus estatutos conceda más derechos a sus accionistas o directores que aquellos que la ley reconoce, siempre y cuando con ello no se actúe contrario a la ley, a la política pública y a lo establecido en el certificado de incorporación. Esto es, si la corporación entiende que está en sus mejores intereses proveerles a los accionistas un derecho más amplio que el concedido por el Artículo 7.10, supra, está en libertad de hacerlo y ello no es contrario a la Ley General de Corporaciones.
*1022 H-1 1 — 1 H-t
Discutida la normativa aplicable, pasemos a resolver la controversia ante nuestra consideración.
En este caso las demandantes sostienen que “conocer y evaluar adecuadamente las determinaciones tomadas por la Junta de Calidad de Vida Vecinal, Inc., y conocer cómo se están administrando los fondos pagados por los miembros de la corporación mensualmente”(11) constituye un propósito válido según lo requiere el Artículo 7.10, supra. No tienen razón. Veamos.
En Helmsman Management Services, Inc. v. A & S Consultants, Inc., supra, pág. 165, la Corte de Cancillería de Delaware se enfrentó a un propósito similar al alegado por las demandantes. Helmsman Management Services, Inc. presentó un requerimiento solicitándo inspeccionar los libros y cuentas de la corporación A & S Consultants. Entre los propósitos alegados se encontraba “[t]o ascertain the corporation’s condition or its affairs so that Helmsman can vote and otherwise exercise its rights in an informed manner”.(12) Al analizar el propósito expresado, la Corte indicó que:
Helmsman’s broadly-phrased purpose may be viewed as subsuming two independent, far narrower purposes. The first is to investigate the possibility of general mismanagement and waste. Conceptually speaking, that purpose is valid. Skoglund v. Ormand Industries, Inc., 372 A.2d [204] at 210-211. Factually, however, that purpose finds no support in the record, because, in this case, unlike Skoglund v. Ormand Industries, Inc., supra, there is no record evidence of possible corporate mismanagement or waste such as would support the type of broad, general records inspection ordered in Skoglund. A mere statement of a purpose to investigate possible general *1023 mismanagement, without more, will not entitle a shareholder to broad § 220 inspection relief. There must be some evidence of possible mismanagement as would warrant further investigation of the matter. See Neely v. Oklahoma Publishing Company, Del. Ch., Civil Action No. 5293, Brown, V.C. (August 15, 1977), reprinted at Del. J. Corp. L. 138, 143 (1977). No such evidence was adduced in this case. Helmsman Management Services, Inc., supra, págs. 165-166.
No obstante, la Corte sostuvo que el segundo interés alegado por el accionista, esto es, investigar las transacciones de la corporación sobre las cuales debía haber sido notificado, era un propósito válido ya que el demandante no había sido notificado de dos reuniones de accionistas y éste tenía derecho a saber qué transacciones se habían apro-bado sin su voto. Helmsman Management Services, Inc., supra, pág. 166. En la controversia ante nuestra consideración, no se alega ningún otro propósito, sólo conocer cómo se está manejando la corporación.
Aun si interpretáramos que las demandantes tienen un interés de investigar una mala transacción o la mala ad-ministración de Calidad de Vida y, por tal razón, están so-licitando la inspección, éstas no cumplieron con el peso de la prueba que requiere el Artículo 7.10, supra. Es decir, no presentaron prueba que pusiera al Tribunal en posición de determinar la existencia de una creencia razonable de la mala administración que se quiere investigar. No se re-quiere, como afirman las demandantes, que se pruebe afir-mativamente la mala administración de la corporación, sino que se presente alguna prueba que establezca una creencia razonable que le permita al tribunal inferir que se está administrando mal la compañía. En este caso, coinci-dimos con el foro primario en que el propósito alegado en los requerimientos presentados no es un propósito válido para efectos de la Ley de Corporaciones.
Nos parece que requerir algo más que mera curiosidad al solicitar una inspección para determinar cómo se está administrando la corporación, en un caso en el cual no hay *1024 ningún indicio o sospecha de una mala transacción o de una mala administración, es afín con el balance que se quiere proteger en la Ley de Corporaciones al exigir un propósito válido para inspeccionar los libros y cuentas de la corporación. Reiteramos que la existencia de un propó-sito válido es una cuestión de hecho, por lo cual se determina caso a caso. CM & M Group, Inc., supra, pág. 792; Helmsman Management Services, Inc., supra, pág. 164. Consecuentemente, entendemos que no se demostró un propósito válido según lo requiere el Artículo 7.10, supra.
Resuelto lo anterior, resta por determinar si el Artículo VIII del Reglamento de Calidad de Vida Vecinal está supe-ditado al requisito de propósito válido del Artículo 7.10, supra, y si sólo se refiere a las actas y a los estados finan-cieros que ya fueron entregados. El Artículo VIII dispone lo siguiente:
[...] La Corporación llevará y mantendrá libros de contabili-dad, levantará actas de todas las reuniones de los miembros, la Junta de Directores, y de los Comités de la Corporación. A su vez, preparará y mantendrá al día un registro con el nom-bre y dirección de todos los miembros que pertenecen a la Corporación. Los libros y records de Calidad de Vida Vecinal, Inc. estarán disponibles y podrán ser examinados por cualquier miembro bonafide en horas hábiles. La Secretaria y el Tesorero de la Junta serán los custodios y tendrán a cargo lo anterior. (Énfasis suplido). Artículo VIII de Reglamento de Calidad de Vida Vecinal, Inc. Apéndice, págs. 78-79.
Como se puede observar, del artículo en controversia no surge expresamente que los miembros tienen que demos-trar un propósito válido; sólo se indica que “[l]os libros y records de Calidad de Vida Vecinal, Inc. estarán disponi-bles y podrán ser examinados por cualquier miembro bo-nafide en horas hábiles”. Por tal razón, a base del Artículo VIII, entendemos que para inspeccionar los libros de con-tabilidad y las actas de todas las reuniones de los miem-bros, de la Junta de Directores y de los Comités de la Cor-poración, no se requiere propósito válido.
*1025 Ahora bien, se ha reiterado por este Tribunal que “[l]a buena fe es un principio general del derecho que permea todo nuestro ordenamiento jurídico y que goza de firme arraigo”. (Énfasis suplido). Álvarez v. Rivera, 165 DPR 1, 27 (2005); Marcial v. Tomé, 144 DPR 522, 542 (1997). Véase, además, Ramírez v. Club Cala de Palmas, 123 DPR 339, 346 (1989). Por lo tanto, aunque la corporación pres-cinda del requisito de propósito válido, los accionistas no pueden abusar del derecho a inspección al utilizarlo de mala fe para hostigar a la corporación. De ser este el caso, la corporación tiene el peso de la prueba y debe demostrar que el accionista hizo el requerimiento de mala fe para hostigar a la corporación. De otra manera, se debe permitir la inspección solicitada, aunque ésta sea por mera curiosidad.
Por otro lado, entendemos que el Artículo VIII del Reglamento sólo se refiere a los libros de contabilidad y a las actas de todas las reuniones de los miembros, la Junta de Directores y de los Comités de la Corporación, pues en el referido artículo se indica que éstos son libros que Calidad de Vida debe mantener.(13) Por lo tanto, para los demás libros y cuentas de la corporación se requiere que, con-forme al Artículo 7.10, supra, se cumpla con el requerimiento jurado y se demuestre un propósito válido para inspeccionarlos. Según reseñamos, las demandantes no cumplen con este requisito.(14)
*1026 Conforme a lo anterior, las demandantes tienen derecho a inspeccionar los libros de contabilidad y las actas de to-das las reuniones de los miembros, la Junta de Directores, y de los Comités de la Corporación, sujeto a que la solicitud de inspección no sea para hostigar a la corporación. Por tal razón, se devuelve el caso al Tribunal de Primera Instancia para que determine si las solicitudes de inspección de las demandantes, a base del Artículo VIII del Reglamento de Calidad de Vida, son de mala fe. En ausencia de mala fe, procede la entrega de los libros de contabilidad y las actas de las reuniones de los miembros, Junta de Directores y Comités de la Corporación de 2005 a 2011.
IV
A tenor con lo anterior, se confirma parcialmente la sen-tencia del Tribunal de Apelaciones en cuanto a la falta de propósito válido según el Artículo 7.10, supra, y se revoca su determinación con respecto a que el derecho de inspec-ción que provee el Artículo VIII del Reglamento de Calidad de Vida está supeditado el requisito de propósito válido del Artículo 7.10 de la Ley de Corporaciones, supra. A tales efectos, se devuelve el caso al Tribunal de Primera Instan-cia para la continuación de los procedimientos conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Fiol Matta concurrió en parte y disintió en parte con la siguiente expresión, a la cual se unió el Juez Asociado Señor Estrella Martínez:
Estoy de acuerdo con la determinación de que una corpora-ción puede ampliar válidamente mediante reglamento el dere-cho a la inspección de los libros y cuentas de la misma, al *1027 omitir el requisito de propósito válido establecido en el Artí-culo 7.10 de la Ley General de Corporaciones, Ley Núm. 164-2009 (14 LPRAsec. 3650). En su Reglamento, Calidad de Vida Vecinal, Inc. se obliga a llevar los libros de contabilidad y le-vantar las actas de todas las reuniones. Además, permite su inspección a cualquier miembro bonafide en las horas hábiles de la oficina de la corporación. La Opinión mayoritaria re-suelve correctamente que las peticionarias no tienen que ale-gar un propósito válido para poder inspeccionar los libros de contabilidad y las actas de las reuniones. Como el Reglamento de Calidad de Vida Vecinal, Inc. tampoco impone un requisito de buena fe, no estoy de acuerdo con devolver el caso al Tribunal de Primera Instancia para que este determine la buena fe de las peticionarias. Por eso, y en ausencia de un requeri-miento de propósito válido, le ordenaría a la corporación que le permita a las peticionarias inspeccionar los documentos enu-merados en su Reglamento.
La Jueza Asociada Señora Pabón Charneco emitió una opinión disidente en parte y de conformidad en parte. El Juez Asociado Señor Feliberti Cintrón se inhibió.

 Aun cuando las partes, así como la ley, hablan de minutas y actas como si fueran dos documentos distintos, ambos se refieren a una misma cosa: al documento que recoge todo lo que ocurrió en la primera reunión de incorporadores o en una reunión de la junta de directores o de accionistas, y que debe ser aprobada en la próxima reunión de la junta correspondiente. Véase C.E. Díaz Olivo, Corporaciones, 2da ed., San Juan, Publicaciones Puertorriqueñas, 2005, pág. 205.

 El Tribunal de Primera Instancia indicó que, al igual que Elsie Herger Pacheco, Anabel Hernández Circuns también redujo la inspección solicitada a los 5 años previos a la fecha de su requerimiento. Apéndice, pág. 49 esc. 1.

 El Artículo VIII del Reglamento de Calidad de Vida Vecinal, Inc. dispone:
“La Corporación llevará y mantendrá libros de contabilidad, levantará actas de todas las reuniones de los miembros, la Junta de Directores, y de los Comités de la Corporación. A su vez, preparará y mantendrá al día un registro con el nombre y dirección de todos los miembros que pertenecen a la Corporación. Los libros y records de Calidad de Vida Vecinal, Inc. estarán disponibles y podrán ser examinados por cualquier miembro bonafide en horas hábiles. La Secretaria y el Tesorero de la Junta serán los custodios y tendrán a cargo lo anterior”. Apéndice, págs. 78-79.

 El Tribunal de Primera Instancia indicó que las demandantes no expresaron en sus alegatos por qué querían conocer y evaluar las determinaciones que ha tomado Calidad de Vida durante los últimos 5 años, como tampoco mencionaron algún hecho que demostrara que la corporación estaba violando su deber fiduciario.

 En específico, los errores planteados fueron los siguientes:
“Primer error: erró el Tribunal de Apelaciones al determinar que el requeri-miento de la parte demandante-peticionaria para la inspección y producción de libros y documentos corporativos carece de un propósito válido, fue vago, impreciso, imper-tinente y no razonablemente conectado con el interés de accionista (miembro) de la parte demandante-peticionaria.
“Segundo error: erró el Tribunal de Apelaciones al determinar que el Artículo VIII del Reglamento de Calidad de Vida Vecinal, Inc., está supeditado al requisito de propósito válido y que sólo se refiere a actas y estados financieros que ya fueron entregados”. Certiorari, págs. 8-9.

 En lo pertinente, el Artículo 7.10 (14 LPRA see. 3650) dispone:
“(b) Cualquier accionista, por sí o por apoderado u otro agente, mediante reque-rimiento jurado en donde consigne su propósito, tendrá el derecho de examinar, así como de hacer copias o extractos, para cualquier propósito válido durante las horas regulares de oficina:
“(1) El registro de acciones, la relación de accionistas y los demás libros de la corporación [...]
........
“[...] ‘Propósito válido’ significará un propósito que se relacione razonablemente con el interés de la persona como accionista [...]
“(c) Si la corporación, o un oficial o agente de la misma, se negare a permitir la inspección requerida por un accionista, su apoderado u otro agente actuando a nom-bre del accionista, según se dispone en el inciso (b) de esta sección, o no responde a la solicitud antes de trascurridos los cinco (5) días laborables posteriores al requeri-miento, el accionista podrá recurrir al Tribunal de Primera Instancia (Sala Superior) para solicitar que emita una orden que obligue a la corporación a permitir tal inspección. Por la presente, se le otorga jurisdicción exclusiva al Tribunal de Primera Instancia (Sala Superior) para determinar si la persona que solicita el examen tiene derecho o no al examen que se solicita. El tribunal podrá ordenar sumariamente a la corporación que permita al accionista examinar el registro de acciones, la relación existente de accionistas y los otros libros de la corporación, y hacer copias y extractos de los mismos. El tribunal también podrá ordenar a la corporación suplir al accio-nista una relación de sus accionistas a una fecha determinada con la condición de que el accionista, con anterioridad pague a la corporación el costo razonable de ob-tener y proveer tal relación, y otras condiciones que el tribunal estime apropiadas. Cuando el accionista procure examinar los libros y cuentas de la corporación que no sean el registro de acciones o la relación de accionistas, deberá demostrar que:
“(1) Es un accionista;
“(2) ha cumplido con esta sección, con respecto a la forma y la manera de hacer el requerimiento de examen de tales documentos, y
“(3) que la inspección que procura es para un propósito válido.
........
“El tribunal podrá imponer discrecionalmente cualquier limitación o condición con respecto al examen o conceder cualquier otro remedio que estime justo y razonable”.

 La controversia ante nosotros en Domenech v. Integration Corp. et al., 187 DPR 595 (2013), trataba sobre si el solicitante de una inspección, en virtud del Artículo 7.10 de la Ley de Corporaciones, supra, podía presentar evidencia extrín-seca para probar que era accionista o si sólo lo podía probar por medio de certificados de acciones o del registro de accionistas de la corporación.

 En lo pertinente, el Artículo 220 de la Ley General de Corporaciones de Delaware, 8 Del. C sec. 220, dispone:
“(b) Any stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose, and to make copies and extracts from:
“(1) The corporation’s stock ledger, a list of its stockholders, and its other books and records [...]
........
*1017 “[...] A proper purpose shall mean a purpose reasonably related to such person’s interest as a stockholder [...]
........
“(c) If the corporation, or an officer or agent thereof, refuses to permit an inspection sought by a stockholder or attorney or other agent acting for the stockholder pursuant to subsection (b) of this section or does not reply to the demand within 5 business days after the demand has been made, the stockholder may apply to the Court of Chancery for an order to compel such inspection. The Court of Chancery is hereby vested with exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought. The Court may summarily order the corporation to permit the stockholder to inspect the corporation’s stock ledger, an existing list of stockholders, and its other books and records, and to make copies or extracts therefrom; or the Court may order the corporation to furnish to the stockholder a list of its stockholders as of a specific date on condition that the stockholder first pay to the corporation the reasonable cost of obtaining and furnishing such list and on such other conditions as the Court deems appropriate. Where the stockholder seeks to inspect the corporation’s books and records, other than its stock ledger or list of stockholders, such stockholder shall first establish that:
“(1) Such stockholder is a stockholder;
“(2) Such stockholder has complied with this section respecting the form and manner of making demand for inspection of such documents; and
“(3) The inspection such stockholder seeks is for a proper purpose.
“[...] The Court may, in its discretion, prescribe any limitations or conditions with reference to the inspection, or award such other or further relief as the Court may deem just and proper”.

 Cabe señalar que el Artículo 220 de la Ley de Corporaciones de Delaware, supra, ha sido enmendado en varias ocasiones para, entre otras cosas, expandir la acepción de los términos accionistas y lista de accionistas, extender los derechos de inspección a los “beneficial owners” y reconocer el derecho de inspección en torno a los libros y registros de las corporaciones subsidiarias. 1 E.P. Welch, Folk on the Delaware General Corporation Law 5th ed., DGCL-VII-220 (2012).

 El Artículo 1.08 de la Ley de Corporaciones, 14 LPRA sec. 3508, dispone lo siguiente:
“(a) Los estatutos iniciales o subsiguientes de la corporación podrán adoptarse, enmendarse o derogarse por los incorporadores, por los directores iniciales si fueron nombrados en el certificado de incorporación, o si la corporación no ha recibido pago alguno por sus acciones, por la junta de directores. Después que la corporación haya recibido cualquier pago por cualesquiera acciones, la facultad para adoptar, alterar o derogar los estatutos, corresponde a los accionistas con derecho al voto o, en el caso de corporaciones sin acciones, a los socios o miembros con derecho al voto. En todo caso, el poder para adoptar, enmendar o derogar los estatutos puede conferirse a la junta de directores o, en el caso de corporaciones sin acciones, al organismo directivo, cualquiera que sea su nombre, en el certificado de incorporación. El hecho de que tal *1021 poder sea conferido a la junta de directores o al organismo directivo que corresponda, según sea el caso, no despojará o limitará a los accionistas o socios del poder de adoptar, enmendar o derogar los estatutos.
“(b) Los estatutos podrán contener cualquier disposición que no sea contraria a la ley o al certificado de incorporación, referente a los negocios de la corporación, a la marcha de sus asuntos, y los derechos o poderes de la corporación o de sus accionis-tas, directores, oficiales o empleados”.

 Certiorari, pág. 12.

 Los otros propósitos alegados por Helmsman Management Services, Inc. eran: “(1) to determine the value of its stock interest in A & S [...] (3) to determine the reason for the nonpayment of dividends, and (4) to determine whether or not there are sufficient funds available for the payment of dividends”. Helmsman Management Services, Inc. v. A & S Consultants, Inc., 525 A.2d 160, 165 (1987).

 Conforme a las alegaciones de la demandada las razones por las cuales se limitaron los documentos que pueden ser revisados mediante el Artículo VIII son las siguientes: “(a) mantener a los miembros de [Calidad de Vida] informados sobre cómo se utilizan los fondos de la corporación; (b) proveer la información necesaria para demostrar cómo se utilizan los fondos de la corporación; y (c) proveer la información de una forma efectiva que no afecte la operación de la corporación, sobre todo cuando la misma cuenta con limitadísimos recursos, ya que todas las personas que sirven en la misma donan de su tiempo libre para el beneficio de sus más de 300 miembros”. Alegato en oposición a petición de certiorari, pág. 16.

 Según los requerimientos, las demandantes tendrían que demostrar propósito válido para inspeccionar los documentos emitidos o en posesión de Calidad de Vida, las resoluciones emitidas por Calidad de Vida y los libros corporativos, excep-tuando los libros de contabilidad. Con respecto al certificado de incorporación, éste es un documento público que se puede obtener en el Departamento de Estado. Igual *1026 ocurre con el listado sobre cualquier demanda o querella presentada por la corpora-ción ante tribunales y agencias estatales o federales, lo cual también es información pública. Los estatutos de la corporación ya están en posesión de las demandantes, ya que, según Calidad de Vida, éstos están incluidos en su Reglamento.