**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

New Castle County Courthouse
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: September 29, 2017
Date Decided: December 22, 2017

Joanne P. Pinckney, Esquire
Seton C. Mangine, Esquire
Pinckney, Weidinger, Urban
   & Joyce LLC
3711 Kennett Pike, Suite 210
Greenville, DE 19807

Jason C. Powell, Esquire
The Powell Firm, LLC
1201 North Orange Street, Suite 500
Wilmington, DE 19899

RE: ***Aloha Power Company, LLC v. Regenesis Power, LLC***
Civil Action No. 12697-VCMR

Dear Counsel:

This post-trial Letter Opinion resolves the plaintiff's action to compel inspection or production of certain books and records. For the reasons that follow, the plaintiff is entitled to some, but not all, of the books and records it demands.

## I. BACKGROUND

The facts stated herein reflect my findings based on the parties' stipulations, forty-two documentary exhibits, and the testimony of one live witness during trial on August 3, 2017. I grant the evidence the weight and credibility that I find it deserves.[1]

---

[1] Citations to testimony presented at trial are in the form "Tr. # (X)" with "X" representing the surname of the speaker, if not clear from the text. After being identified initially, individuals are referenced herein by their surnames without

Plaintiff Aloha Power Company, LLC ("Aloha") is a Delaware limited liability company founded in May 2006 by Dennis Marini.[2] Defendant Regenesis Power, LLC ("Regenesis" or the "Company") is a Delaware limited liability company founded in May 2006.[3] Aloha is a member of the Company.[4]

Aloha seeks inspection of the Company's books and records under the Company's operating agreement (the "Operating Agreement")[5] and 6 *Del. C.* § 18-305 of the Delaware Limited Liability Company Act.[6] On September 24, 2015 and December 7, 2015, Aloha sent letters to Regenesis demanding inspection of the

---

regard to formal titles such as "Dr." I intend no disrespect. Exhibits are cited as "JX #," and facts drawn from the parties' Joint Pre-Trial Stipulation and Order are cited as "PTO ¶ #." Unless otherwise indicated, citations to the parties' briefs are to post-trial briefs.

[2]    PTO ¶ 1.

[3]    PTO ¶ 4.

[4]    PTO ¶ 31.

[5]    The Operating Agreement was executed on June 1, 2006, and amended on October 1, 2006, and April 30, 2007. PTO ¶¶ 8, 10-11; JX 5, 5-A, 5-A.2.

[6]    While I rely on the language of the Operating Agreement to determine Aloha's demands for the Company's books and records, the Operating Agreement closely tracks the language of 6 *Del. C.* § 18-305, and both parties cite to case law interpreting the statute; thus, I consider, at times, case law interpretations of 6 *Del. C.* § 18-305.

Company's books and records. On October 7, 2016, Aloha filed its Verified Amended Complaint for Inspection of Books and Records (the "Complaint").

## II. ANALYSIS

Aloha seeks a host of books and records under the Operating Agreement.[7] The Operating Agreement requires the Company to produce and send certain books and records to members without the need for any demand, while other documents under the Operating Agreement require members to show a proper purpose for inspection. I address these two categories separately.

### A. Books and Records that Require No Demand for Inspection

Aloha seeks to inspect certain books and records that require no demand for inspection under four provisions of the Operating Agreement. First, Aloha seeks copies of the Company's balance sheet, income statement, and statement of changes in financial position from 2011 to 2017. Section 8.3.1 of the Operating Agreement provides:

> The Governing Members shall cause the Company to cause financial statements prepared in accordance with generally accepted accounting principles to be sent to each of the Members not later than ninety (90) days (or such other period as the Governing Members shall select) after the close of the Fiscal Year. The report shall contain a

---

[7] Capitalized terms not otherwise defined herein are defined under Article I of the Operating Agreement. JX 5 at 1.

> balance sheet as of the end of the Fiscal Year and an income statement and statement of changes in financial position for the Fiscal Year. Such financial statements shall be accompanied by the report thereon, of the independent accountants engaged by the Company.[8]

Section 8.3.1 requires production of these documents without the need for a demand.

Thus, Aloha is entitled to inspect the books and records listed in Section 8.3.1 of the

Operating Agreement from 2011 to 2017.

Second, Aloha seeks the information that is necessary for Aloha to complete

its federal and state income tax or information returns and a copy of the Company's

federal, state, and local income tax or information returns from 2011 to 2017.

Section 8.3.2 provides:

> The Governing Members shall cause the Company to cause to be prepared at least annually, at Company expense, information necessary for the preparation of the Member's federal and state income tax returns. The Governing Members shall send or cause to be sent to each Member within ninety (90) days (or such other period as the Governing Members shall select) after the end of each taxable year such information as is necessary to complete federal and state income tax or information returns, and a copy of the Company's federal, state, and local income tax or information returns for that year. On or before November 15 of each year, the Governing Members shall provide each Member with the following: (i) a statement showing each Member's Capital Account as of the immediately preceding October 31; (ii) an estimate of each

---

[8]     *Id.* at 35.

> Member's taxable income for the current Fiscal Year; and
> (iii) each Member's share of allocated non-recourse debt.[9]

Section 8.3.2 requires production of these documents without the need for a demand.

Thus, Aloha is entitled to inspect the books and records listed in Section 8.3.2 of the

Operating Agreement from 2011 to 2017 that have not already been provided. The

Company shall certify that such documents are complete and accurate.[10]

Third, Aloha seeks minutes of all meetings of the members as described in

Section 5.3.[11] The amendment to Section 5.3 of the Operating Agreement provides

that "[t]he Governing Members or their designee shall prepare and distribute to all

---

[9]     *Id.* at 35-36.

[10]    On May 3, 2017, Regenesis provided Aloha with copies of the K-1s for the years 2010-2015, but Aloha questions whether the 2015 K-1 is complete "because it consists of only one page, whereas prior years contained multi-page K-1s." PTO 13.

[11]    JX 5 at 14 ("At any time, and from time to time, the Governing Members may, but shall not be required to, call meetings of the Members. Written notice of any such meeting shall be given to all Members not less than five (5) days nor more than forty-five (45) days prior to the date of such meeting. Each meeting of the Members shall be conducted by the Governing Members or any designee(s) thereof. Each Member may authorize any other Person (whether or not such other Person is a Member) to act for it or on its behalf on all matters in which the Member is entitled to participate. Each proxy must be signed by the Member or such Member's attorney-in-fact. All other provisions governing, or otherwise relating to, the holding of meetings of the Members, shall from time to time be established in the sole discretion of the Governing Members.").

Members minutes of all meetings."[12]  Section 5.3 requires production of such minutes without the need for a demand.  Thus, Aloha is entitled to inspect the minutes of the meetings of the members called by governing members pursuant to Section 5.3 from 2011 to 2017.

Fourth and finally, Aloha seeks copies of any powers of attorney pursuant to which the Operating Agreement or any amendments thereto have been executed. Section 8.2.4 states that the "Governing Members shall promptly furnish to a Member a copy of any amendment to the . . . [Operating] Agreement executed by the Governing Members pursuant to a power of attorney from the Member."[13]  On May 3, 2017, Regenesis provided Aloha copies of the Operating Agreement and its two amendments,[14] but the Company provided no copies of any related powers of attorney.  Section 8.2.4 requires production of these documents without the need for a demand.  Thus, Aloha is entitled to copies of any related powers of attorney under Section 8.2.4 of the Operating Agreement.

---

[12]     JX 5A at 2 ("Section 5.3, Meetings, is amended by adding the following sentence to the end thereof, 'The Governing Members or their designee shall prepare and distribute to all Members minutes of all meetings.'").

[13]     JX 5 at 35.

[14]     PTO ¶ 29.

### B.     Books and Records that Require a Proper Purpose for Inspection

Similar to 6 *Del. C.* § 18-305(a), Section 8.2 of the Operating Agreement permits Aloha to access certain books and records "for purposes reasonably related to the interest" of Aloha as a member of the Company.[15]   "Once a member demonstrates that its primary purpose is proper, any secondary purpose, whether proper or improper, is irrelevant."[16]   "Any number of purposes may be proper, depending on the context of a particular case, but a stockholder's purpose must not be adverse to the company, unrelated to a legitimate interest of the stockholder, or intended to harass the corporation."[17]   And a stockholder's entitlement to inspection "is not open-ended; it is restricted to inspection of the books and records needed to

---

[15]   JX 5 at 35. *See Somerville S Tr. v. USV P'rs, LLC*, 2002 WL 1832830, at *5 (Del. Ch. Aug. 2, 2002) ("The case law interpreting Section 18-305 holds that for inspection relief to be granted, the plaintiff must first establish by a preponderance of the evidence the existence of a 'proper purpose' for inspection.  A proper purpose is one that is 'reasonably related to such person's interest' as a member, limited partner or stockholder.") (citations omitted).

[16]   *Somerville*, 2002 WL 1832830, at *5.

[17]   *Bizzari v. Suburban Waste Servs., Inc.*, 2016 WL 4540292, at *5 (Del. Ch. Aug. 30, 2016) (citations omitted); *see Somerville*, 2002 WL 1832830, at *5 n.4 ("Because of a lack of reported decisions in the LLC context, the Court may look to cases interpreting similar Delaware statutes concerning corporations and partnerships.") (citing *Bond Purchase, L.L.C. v. Patriot Tax Credit Props., L.P.*, 746 A.2d 842, 851 (Del. Ch. 1999)).

perform the task. Accordingly, inspection is limited to those documents that are necessary, essential, and sufficient for the shareholders' purpose."[18]

In order for Aloha to inspect the books and records that require a proper purpose under Section 8 of the Operating Agreement, Aloha alleges a host of proper purposes, which I divide into three categories: (1) to value its membership interest; (2) to understand the dilution of its membership interest; and (3) to investigate mismanagement.[19]

Regenesis argues that Aloha is barred from inspecting any books and records. Regenesis insists that none of Aloha's purported proper purposes reflect its actual purpose, which Regenesis claims is to harass the Company.[20] Regenesis's primary evidence in support of its argument is a 2009 lawsuit between the parties in California, in which Regenesis prevailed. While it is apparent that the parties have mutual hostility between them, the evidence at trial did not show that Aloha's sole purpose is to harass the Company. Therefore, Aloha is not barred from inspecting books and records upon a showing of a proper purpose.

---

[18]   *BBC Acq. Corp. v. Durr-Fillauer Med., Inc.*, 623 A.2d 85, 88 (Del. Ch. 1992) (citations omitted).

[19]   Compl. ¶¶ 15-17.

[20]   Def.'s Opening Br. 9.

To assess the value of Aloha's membership interest in Regenesis, Aloha seeks copies of the operating statements and general ledgers of the Company, if any, for the six most recent fiscal years under Section 8.1(f) of the Operating Agreement. Although "[v]aluing one's ownership interest is a proper purpose for seeking books and records,"[21] "the burden of proof is always on the party seeking inspection to establish that each category of the books and records requested is essential and sufficient to [that party's] stated purpose."[22]  Here, Aloha makes no attempt to explain why the books and records under Section 8.3.1—the Company's financial statements, including a balance sheet, income statement, and statement of changes in financial position for the fiscal years 2011 to 2017—are insufficient to satisfy Aloha's stated purposes; nor does Aloha explain why the Company's operating statements and general ledgers are necessary for its purposes.  Thus, I deny Aloha access to the Company's operating statements and general ledgers.

Next, Aloha seeks under Section 8.1(a) "a current list of the full name and last known business or residence address of each Member and Economic Interest Owner

---

[21]     *Sanders v. Ohmite Hldgs., LLC*, 17 A.3d 1186, 1193 (Del. Ch. 2011) (citing *Somerville*, 2002 WL 1832830, at *8).

[22]     *Id.* at 1194 (citing *Thomas & Betts Corp. v. Leviton Mfg. Co.*, 681 A.2d 1026, 1035 (Del. 1996)).

set forth in alphabetical order, together with the Capital Contributions, Capital Account, Number of Units and Percentage Interest of each Member and Economic Interest Owner"[23] in order to understand the dilution of its membership interest in Regenesis since 2011. Regenesis's only response is that any purpose relating to Aloha's dilution is improper because it was the subject of a 2009 lawsuit between the parties in California. But Regenesis makes no attempt to explain why the California litigation—which ended in 2011—would bar inspection of documents related to events that took place *after* the resolution of that litigation. As such, Aloha is entitled to the books and records under Section 8.1(a) of the Operating Agreement from 2011 to 2017 to understand the dilution of its membership interest after 2011.[24]

Aloha demands copies of "the Company's books and records as they relate to the internal affairs of the Company for at least the current and past four Fiscal Years" under Section 8.1(g) of the Operating Agreement.[25] Although Aloha does not specifically explain why books and records relating to the Company's internal affairs—which seems extremely broad and ambiguous—are necessary to fulfill any

---

[23]    JX 5 at 34.

[24]    *See Sanders*, 17 A.3d at 1193 (determining legitimacy of the dilution of member's interest is a proper purpose).

[25]    JX 5 at 35.

of Aloha's proposed proper purposes,[26] it appears that Aloha seeks these documents to allege mismanagement or wrongdoing.

The precise allegations of mismanagement or wrongdoing are unclear, but Marini testified that he needs "to find out what's going on with the company, [and] the internal structure of the company"[27] because there were decreases in the capital account, new entities appeared on various K-1s, and the Company may have ceased operations (which came to light after Aloha filed the Complaint).[28] As this Court has routinely held, "[a] mere statement of a purpose to investigate possible general mismanagement, without more, will not entitle a shareholder to broad [books and records] inspection relief."[29] Aloha "must present some credible basis from which the court can infer that waste or mismanagement may have occurred."[30] "That 'threshold may be satisfied by a credible showing, through documents, logic,

---

[26] Aloha's demand for books and records under Section 8.1(g) could be denied on this basis alone.

[27] Tr. 21.

[28] Neither party provided any evidence that the Company has dissolved or filed for bankruptcy.

[29] *Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 122 (Del. 2006) (citing *Helmsman Mgmt. Servs., Inc. v. A & S Consultants, Inc.*, 525 A.2d 160, 166 (Del. Ch. 1987)).

[30] *Thomas & Betts Corp.*, 681 A.2d at 1031.

testimony or otherwise, that there are legitimate issues of wrongdoing.'"[31]  Neither

the proposed documentary evidence nor Aloha's testimony convinces me that Aloha

has presented some credible basis to infer mismanagement or wrongdoing.  Thus, I

deny Aloha's demand to inspect the books and records relating to the internal affairs

of the Company under Section 8.1(g) of the Operating Agreement.

### C.     Attorney Fees Award

Aloha seeks to recover attorney fees for this action.[32]  The parties' briefings

with respect to this issue are unhelpful.  Fortunately, however, Delaware case law

provides some guidance.  Delaware courts generally apply the American Rule,[33] but

"where the parties have determined the allocation of fees by private ordering," like

in an LLC's operating agreement,[34] "departure from this general rule and deference

---

[31]    *In re Plains All Am. Pipeline*, 2017 WL 6016570, at *2 (Del. Ch. Aug. 8, 2017) (quoting *Sec. First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 568 (Del. 1997)).

[32]    Compl. ¶ 28.

[33]    Under the American Rule, "each party is obligated to pay its own attorneys' fees regardless of the outcome." *W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*, 2009 WL 458779, at *8 (Del. Ch. Feb. 23, 2009).

[34]    Limited liability company agreements are "creatures of contract, which should be construed like other contracts." *Mickman v. Am. Int'l Processing, L.L.C.*, 2009 WL 2244608, at *2 (Del. Ch. July 28, 2009); 6 *Del. C.* § 18-1101(b).  "Such agreements operate to displace otherwise applicable default provisions in Delaware's Limited Liability Company Act." *RED Capital Inv. L.P. v. RED Parent LLC*, 2016 WL 612772, at *2 (Del. Ch. Feb. 11, 2016); 6 *Del. C.* § 18-305(a).  The interpretation of

to their agreement are warranted. Absent any qualifying language that fees are to be awarded claim-by-claim or on some other partial basis, a contractual provision entitling the prevailing party to fees will usually be applied in an all-or-nothing manner."[35]

Aloha seeks an award of attorneys' fees under Section 11.18 of the Operating Agreement. Section 11.18 states:

> In the event that any dispute between the Company and the Members or among the Members should result in litigation or arbitration, the prevailing party in such dispute shall be entitled to recover from the other party all reasonable actual fees, costs and expenses of enforcing any right of the prevailing party, including without limitation, reasonable actual attorneys' fees and expenses.[36]

As shown above, Aloha is the prevailing party in this action. Section 11.18 contains no "qualifying language that fees are to be awarded claim-by-claim or on some other

---

an LLC agreement begins with the language of the agreement. *Arbor Place, L.P. v. Encore Opportunity Fund, L.L.C.*, 2002 WL 205681, at *3 (Del. Ch. Jan. 29, 2002).

[35] *W. Willow-Bay Ct., LLC*, 2009 WL 458779, at *8; s*ee also Mahani v. Edix Media Gp., Inc.*, 935 A.2d 242, 245 (Del. 2007); *Choupak v. Rivkin*, 2015 WL 1589610, at *20 (Del. Ch. Apr. 6, 2015), *aff'd*, 129 A.3d 232 (Del. 2015); *Aveta Inc. v. Bengoa*, 2010 WL 3221823, at *6 (Del. Ch. Aug. 13, 2010); *Comrie v. Enterasys Networks, Inc.*, 2004 WL 936505, at *2 (Del. Ch. Apr. 27, 2004).

[36] JX 5 at 44.

partial basis."[37]  Thus, Aloha is entitled to all "reasonable actual attorneys' fees and expenses."[38]

## III.   CONCLUSION

For the aforementioned reasons, Aloha is entitled to its reasonable attorneys' fees under Section 11.18 and to books and records from 2011 to 2017 under Sections 5.3, 8.2.4, 8.3.1, 8.3.2, and 8.1(a) of the Operating Agreement.  Counsel shall confer and submit an implementing form of order consistent with this ruling.

**IT IS SO ORDERED.**

Sincerely,

*/s/Tamika Montgomery-Reeves*

Vice Chancellor

TMR/jp

---

[37]    *W. Willow-Bay Ct., LLC*, 2009 WL 458779, at *8.

[38]    JX 5 at 44.