# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BUCKS COUNTY EMPLOYEES RETIREMENT FUND, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **C.A. No. 2019-0820-JRS** |
| CBS CORPORATION, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Date Submitted:  November 22, 2019
Date Decided:  November 25, 2019

Michael Hanrahan, Esquire, Corinne Elise Amato, Esquire, Eric J. Juray, Esquire and Xi (Elizabeth) Wang, Esquire of Prickett, Jones & Elliott, P.A., Wilmington, Delaware and Eric L. Zagar, Esquire, Michael C. Wagner, Esquire and Grant D. Goodhart, III, Esquire of Kessler Topaz Meltzer & Check, LLP, Radnor, Pennsylvania, Attorneys for Plaintiff Bucks County Employees Retirement Fund.

Elena C. Norman, Esquire and Daniel M. Kirshenbaum, Esquire of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware and Jonathan K. Youngwood, Esquire and Linton Mann III, Esquire of Simpson Thacher & Bartlett LLP, New York, New York, Attorneys for Defendant CBS Corporation.

**SLIGHTS, Vice Chancellor**

National Amusements, Inc. ("NAI") controls both CBS Corporation and Viacom, Inc. through its majority ownership of the Class A voting common stock of both companies. NAI, in turn, is controlled by Shari Redstone ("Redstone"), giving her effective control of both CBS and Viacom. In 2016, Redstone exercised her control of Viacom to remove its CEO and change the composition of its board of directors. After consolidating her control over Viacom, she proposed that CBS and Viacom merge (the "2016 Merger"). CBS's board of directors (the "CBS Board") empowered a special committee to review the proposed combination. That committee eventually declined to pursue the merger after determining that Viacom's declining performance made it a less than attractive partner.

In 2018, Redstone again proposed a CBS-Viacom merger (the "2018 Merger"). The CBS Board appointed another special committee to review and negotiate the transaction. Once again, after agreeing to an exchange ratio for the stock-for-stock transaction, the CBS special committee refused to recommend the 2018 Merger after failing to secure Redstone's agreement to allow the CBS minority stockholders to vote on the transaction and failing to secure certain governance protections for the combined company.

While Redstone had accepted the failure of the 2016 Merger, CBS's independent directors suspected she would not sit idle after being rebuffed a second time. They were convinced she would use her power as controller to force through

1

the 2018 Merger. In response to this perceived threat, CBS's Board took the extraordinary step of attempting to issue a stock dividend that would eliminate NAI's voting control of CBS. CBS then filed preemptive litigation against NAI in this court alleging breaches of fiduciary duty and seeking a temporary restraining order that would prevent NAI from changing the CBS Board in order to rescind the stock dividend. In its pleadings, CBS aggressively condemned the proposed merger and accused Redstone of abusing her role as CBS and Viacom's controller. It alleged, "[Redstone] presents a significant threat of irreparable and irreversible harm to [CBS] and its stockholders[.]"[1] It also claimed Redstone was pushing the merger to "rescue Viacom" and seeking the combination "regardless of the strategic and economic merits of the transaction and to the exclusion of considering any other potential transaction."[2]

After intense litigation, the parties entered into a settlement agreement (the "Settlement Agreement") that, among other things, significantly altered the composition of the CBS Board. For her part, Redstone agreed that, for a period of two years, she would not propose a CBS-Viacom merger without the invitation of two-thirds of CBS's independent directors.

---

[1] JX 12 at 2.

[2] JX 14 at 12 n.3; JX 12 at 5.

2

In April 2019, CBS formed a committee of purportedly non-NAI affiliated directors (the "Special Committee") to evaluate strategic transactions. That process led very quickly, once again, to consideration of a CBS-Viacom merger. On August 13, 2019, CBS and Viacom announced they would merge (the "2019 Merger"). A CBS stockholder, Plaintiff, Bucks County Employees Retirement Fund, served CBS with a demand letter in September 2019 (the "Demand"), in which it sought to inspect certain books and records under 8 *Del. C.* § 220. The Demand stated among its purposes for inspection an intent to investigate mismanagement or wrongdoing related to the 2019 Merger. CBS agreed to provide some, but not all, of the documents requested in the Demand, and Plaintiff filed its Verified Complaint shortly thereafter.

The 2019 Merger will likely close the first week of December 2019. Plaintiff states it may use the fruits of inspection to seek to enjoin the closing, hence this expedited post-trial decision.[3] For reasons stated below, I find that Plaintiff has stated a proper purpose for inspection under Section 220 by having demonstrated a

---

[3] By having adjudicated this Section 220 action on an expedited basis prior to the transaction's closing, I do not mean to endorse the Plaintiff's approach here as a "playbook" that should be followed by other stockholders who may seek to challenge transactions pre-closing. Nor do I intend to suggest that the timing of Plaintiff's strategic moves here is conducive to a proper review of this transaction prior to its scheduled closing next week. That very much remains to be seen.

credible basis to suspect wrongdoing. I also find that some, but not all, of the documents sought are necessary and essential to fulfill that purpose.

## I. BACKGROUND

I have drawn the facts from the parties' pretrial stipulation, evidence admitted at trial and those matters of which the Court may take judicial notice.[4] A trial on a paper record was held on November 22, 2019. The following facts were proven by a preponderance of the competent evidence.[5]

### A. The Parties and Relevant Non-Parties

Plaintiff, Bucks County Employees Retirement Fund, is a beneficial owner of CBS Class B non-voting common stock.[6]

Defendant, CBS, is a Delaware corporation with its principal place of business in New York, New York.[7] CBS's common stock is divided into two classes: Class A stock, which has one vote per share; and Class B non-voting stock.[8]

---

[4] I cite to the trial arguments of counsel as "Tr.__", the Joint Pre-Trial Stipulation and Order as "PTO ¶ __," the joint trial exhibits as "JX__," and the Verified Complaint as "Compl. ¶ __."

[5] *Kosinski v. GGP, Inc.*, 214 A.3d 944, 950 (Del. Ch. 2019) (confirming a stockholder must prove by a preponderance of the evidence all the elements of a Section 220 claim).

[6] Compl. ¶ 10; PTO ¶ 1.

[7] Compl. ¶ 11; PTO ¶ 2.

[8] PTO ¶ 3.

Non-party, Viacom, is a Delaware Corporation with its principal place of business in New York, New York.[9] Viacom maintains the same dual-class common stock structure as CBS.[10]

Non-party, NAI, is the controlling stockholder of both CBS and Viacom.[11] As of August 2019, NAI beneficially owned 78.9% of CBS's voting stock and 79.8% of Viacom's voting stock.

Non-party, Shari Redstone, holds voting control of CBS and Viacom through her control of NAI.[12] She is the Vice-Chair of both the CBS and Viacom boards.[13]

## B. The 2016 and 2018 Merger Attempts

In 2016, after Redstone consolidated her control of Viacom by replacing Viacom's CEO and replacing directors on its board, Redstone began pursuing a merger of CBS and Viacom.[14] CBS formed a special committee to consider the

---

[9] Viacom Inc., Annual Report (Form 10-K) 1–2 (Nov. 14, 2019); *see In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170 (Del. 2006) (noting this court may take judicial notice of SEC filings).

[10] PTO ¶ 4.

[11] PTO ¶ 5.

[12] *See* JX 20 at 7–8; Compl. ¶¶ 12, 14.

[13] *See* Viacom Inc., Annual Report (Form 10-K) 109 (Nov. 14, 2019); *and* CBS Corp., Proxy Statement (Schedule 14A) 2 (Apr. 12, 2019).

[14] JX 15 at 2. CBS has raised relevancy objections to any evidence related to the 2016 Merger and the 2018 Merger. Those objections are overruled. As explained below, the CBS Board's decisions to reject those transactions, but approve the 2019 Merger, are relevant to Plaintiff's allegation that the CBS Board has approved this most recent

5

proposed transaction, and that committee ultimately rejected it.[15] Redstone was not pleased with this result. She told CBS's independent directors, "the failure to get the deal done ha[s] caused Viacom to suffer," and promised "the merger would get done 'even if [she had] to use a different process.'"[16] In a text message she wrote to her personal attorney, Robert Klieger, after the deal failed, she revealed the reason for her frustration; "Viacom [was] tanking . . . ."[17]

In 2018, Redstone again proposed a merger of CBS and Viacom.[18] CBS again empowered a special committee to negotiate the merger. And, again, CBS declined

---

transaction for reasons other than the best interests of CBS stockholders. *See* DRE 401 ("Evidence is relevant if it has any tendency to make a fact [of consequence] more or less probable that it would be without the evidence[.]"). CBS also objects to certain newspaper articles and CBS public filings as hearsay. Those objections are also overruled. "In establishing a credible basis for further investigation of possible mismanagement, hearsay statements may be considered, provided they are sufficiently reliable." *In re Plains All Am. Pipeline, L.P.*, 2017 WL 6016570, at *4 (Del. Ch. Aug. 8, 2017) (internal quotations omitted). This is especially so when the credible basis is supported by other competent evidence. *See In re Facebook, Inc. Sec. 220 Litig.*, 2019 WL 2320842, at *2 n.10 (Del. Ch. May 31, 2019). Finally, CBS has raised several authenticity objections. These objections are perplexing given CBS's stipulation to try the case on a paper record, thereby ensuring that no witness would be presented to authenticate exhibits for either side. PTO ¶ 24. In any event, I am satisfied that each exhibit to which an authenticity objection has been lodged "is what the proponent claims it is." DRE 901(a); DRE 901(b)(4), (7); DRE 902(6). The authenticity objections, therefore, are overruled as well.

[15] JX 14 at 2.

[16] *Id.*

[17] JX 7.

[18] JX 14 at 2.

to go forward. This time, the parties got as far as negotiating an exchange ratio of .6135 shares of CBS per each Viacom share, but the deal fell apart after Redstone refused to make certain governance concessions.[19] In particular, CBS insisted that the merger be subject to approval by a vote of the majority of CBS's unaffiliated stockholders.[20] Redstone said no.[21] Fearing that Redstone would use her control over CBS to force through a merger, CBS's independent directors took extraordinary measures. Specifically, the independent directors sought to eliminate NAI's control of CBS through a stock dividend. CBS then preemptively sued NAI in this court to obtain judicial approval of the dividend and restrain NAI from forcing a merger. In various filings with the court, CBS alleged the merger was a "rescue" and a "bailout" of Viacom that Redstone was pursuing "regardless of the strategic and economic merits of the transaction . . . ."[22] Much of the background of this litigation is set forth in this court's opinion in *CBS Corporation v. National Amusements, Inc.*[23]; it need not be rehashed here.

---

[19] JX 143 at 79.

[20] *Id.*

[21] *Id.*

[22] JX 14 at 12 n.3; JX 19 at 8; JX 12 at 5.

[23] 2018 WL 2263385 (Del. Ch. May 17, 2018).

The parties eventually resolved the 2018 litigation through the Settlement Agreement. Among other provisions, that agreement forbids Redstone from proposing a merger of CBS and Viacom for two years absent an invitation from two-thirds of CBS's independent directors.[24] The Settlement Agreement also prompted an overhaul of the CBS Board, with seven directors resigning and six new directors joining.[25]

At the same time, facing allegations of sexual misconduct, CBS's CEO, Leslie Moonves, resigned his role and was replaced on an interim basis by Joseph Ianniello.[26] Ianniello had been a strong ally of Moonves during CBS's conflict with NAI, and NAI had directly sued Ianniello in counterclaims brought in the 2018 Chancery litigation.[27] The counterclaims alleged, among other things, that Ianniello was overcompensated and lacked the qualifications to function as CBS's

---

[24] JX 30 at 2.

[25] *Id.*

[26] *Id.* at 4.

[27] *See* JX 18.

8

CEO.[28]  Weeks after the Settlement Agreement, three additional CBS directors resigned.[29]  One was later replaced, leaving the CBS Board with 11 directors.[30]

### C. The 2019 Merger

CBS's Nominating and Governance Committee held a meeting on February 22, 2019.[31]  Redstone attended the meeting although she is not a member of that committee.[32]  During the meeting, the committee discussed "strategic possibilities for the Company" and "the return of Centerview Partners LLC and Lazard Frères & Co. LLC[,]" who had functioned as CBS's financial advisors during the prior merger attempts.[33]  After Redstone left the meeting, the committee determined to recommend to the full CBS Board that it form a Special Committee to "review certain specified strategic transactions for the Company."[34]  CBS's Executive Vice President and Chief Legal Officer, Lawrence Tu, attended the

---

[28] *Id.* at 9.

[29] JX 32.

[30] JX 34 at 9.

[31] JX 53.

[32] *Id.*

[33] *Id.* at 2.

[34] *Id.*

February 22 meeting. He abruptly resigned his post immediately following the meeting for "Good Reason," as defined in his employment agreement.[35]

On March 9, CBS's independent directors held a special meeting.[36] Senior advisors from Centerview and Lazard attended this meeting where "specific potential acquisition/merger opportunities" for CBS were discussed.[37] After Centerview and Lazard's representatives left the meeting, Ianniello presented management's recommendation that CBS merge with Viacom.[38] Ianniello then left the meeting and the CBS Board determined to engage outside legal counsel to advise the CBS Board in connection with a potential CBS-Viacom merger.[39] The Special Committee was formed about a month later, on April 9, 2019.[40]

Months before the CBS Board embarked on its consideration of a CBS-Viacom merger for the third time, Redstone and Ianniello met in the fall of 2018 after the Chancery litigation had been resolved. Following that meeting, in a striking

---

[35] JX 54 at 2; *see* JX 6 at 13 (defining "Good Reason" as including an assignment of "duties or responsibilities . . . materially inconsistent with [his] position, titles, offices or reporting relationships . . . or that materially impair [his] ability to function [in his assigned role].").

[36] JX 56.

[37] *Id.* at 1.

[38] *Id.* at 3.

[39] *Id.*

[40] JX 66.

about-face from his spirited support of Moonves's opposition to the 2018 Merger, Ianniello expressed his support for a CBS-Viacom merger.[41] Redstone and Ianniello met again to discuss the merger on March 25, 2019, and Ianniello again expressed his support for the deal.[42] A month later, on April 23, Ianniello and CBS entered into an amended employment agreement that substantially increased his compensation.[43]

The 2019 Merger was publicly announced on August 13, 2019.[44] While the transaction is structured so CBS will acquire Viacom, Plaintiff characterizes the transaction as a "Viacom takeover of CBS."[45] Under the merger agreement, CBS will acquire Viacom through a stock exchange whereby Viacom's stockholders will receive .59625 shares of CBS stock for each of their Viacom shares.[46] Even though CBS is the acquiring company, the combined company will be named ViacomCBS.[47] CBS stock will be delisted from its exchange and the new stock will

---

[41] JX 143 at 81.

[42] *Id.* at 82.

[43] JX 70.

[44] JX 143 at 110.

[45] Pl.'s Opening Pre-Trial Br. ("OB") at 2, 17.

[46] JX 143 at 4.

[47] *Id.* at 5.

11

trade under the new Viacom tickers VIACA and VIAC.[48]  Viacom CEO, Robert Bakish, will become CEO of the combined company.[49]  The new board will comprise thirteen members: six current CBS directors, four current Viacom directors, Redstone and two of her allies, Klieger and Bakish.[50]  Ianniello will stay on as Chairman and CEO of CBS and reportedly will receive up to $70 million at closing.[51]  CBS's unaffiliated stockholders will have no say; indeed, CBS's Board apparently did not even ask to condition the 2019 Merger on the approval of CBS's unaffiliated stockholders.[52]  CBS's stock was trading at $48.70 per share when the deal was announced; it is currently trading around $39 per share.[53]

---

[48] For Viacom's Class A and Class B shares, respectively.  JX 138 at 1.

[49] JX 129 at 2.

[50] *Id.* at 3.  Additionally, Nicole Seligman, whom Redstone had previously installed on the Viacom board, and with whom Redstone has a close personal relationship, will Chair the Nominating and Governance Committee, which will review related party transactions for the combined company.  *See* JX 129 at 3; JX 160; *About CBS Corp.*, CBS. CORP. (Nov. 24, 2019, 10:34 PM), https://www.cbscorporation/wp-content/uploads/2018/03/NG-Charter-12-12-13.pdf.  I take judicial notice of CBS's own statements about its corporate governance because their accuracy cannot reasonably be questioned.  *See* D.R.E. 201(b)(2).

[51] JX 143 at 164–67; JX 128 at 1.

[52] Tr. 26:1–17.

[53] *See* JX 149; *CBS Corp. (CBS)*, YAHOO! FINANCE (Nov. 24, 2019, 10:29 PM), https://finance.yahoo.com/quote/CBS?p=CBS.  I take judicial notice of these reported stock prices because they are not subject to reasonable dispute.  *See* D.R.E. 201(b)(2); *see also Gen. Motors*, 897 A.2d at 169.

## D. Procedural History

Plaintiff sent its Demand on September 27, 2019.[54] Of the eleven enumerated categories of documents sought for inspection, nine are still live[55]: (3) documents reviewed by the CBS Board in connection with creating the Special Committee and appointing directors following the 2018 Settlement Agreement; (4) documents reviewed by the Nominating and Governance Committee for purposes of determining director independence; (5) and (6) materials reviewed by the CBS Board and its committees relating to the 2016, 2018 and 2019 Mergers, including presentations by the CBS Board's financial advisors; (7) expert reports prepared for CBS concerning the 2018 litigation; (8) documents concerning Ianniello's employment and compensation; (9) and (10) electronic documents exchanged between Redstone and the CBS and Viacom Boards and their advisors; and (11) electronic documents exchanged between Redstone and Ianniello.[56] After determining that CBS's voluntary production was inadequate, Plaintiff filed its

---

[54] JX 132.

[55] At trial, the parties appeared to agree that Plaintiff has been provided with documents responsive to Requests (1) and (2), which sought books and records related to the current merger and director conflict questionnaires. Tr. 82:3–20. CBS shall certify that it has produced all documents responsive to these Requests.

[56] JX 132 at 8–9.

Verified Complaint on October 15, 2019, and this Court granted Plaintiff's Motion to Expedite on October 24.  Trial on a paper record was held on November 22.

## II. ANALYSIS

The standard for evaluating a demand for books and records under Section 220 is well settled.  A stockholder of a Delaware corporation may inspect a corporation's books and records for any "proper purpose" reasonably related to the stockholder's "interest as a stockholder."[57]  It is also well settled that the desire to investigate mismanagement or wrongdoing is a proper purpose.[58]  To justify the purpose to investigate mismanagement or wrongdoing, the stockholder must demonstrate "a credible basis from which a court can infer that mismanagement, waste or wrongdoing may have occurred."[59]  "Credible basis" is the lowest burden of proof known in our law; a plaintiff need only present "some evidence" of wrongdoing, "through documents, logic, testimony or otherwise," to satisfy the

---

[57] 8 *Del. C.* § 220(b) ("A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder.").  CBS does not dispute Plaintiff is a stockholder or that it has satisfied the "form and manner requirements."  *See Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 775–76 (Del. Ch. 2016) (discussing "form and manner" requirements).

[58] *Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 121 (Del. 2006) ("It is well established that a stockholder's desire to investigate wrongdoing or mismanagement is a 'proper purpose.'").  Plaintiff pleads other purposes to inspect but acknowledges in its brief that establishing these purposes requires that it establish a credible basis to investigate mismanagement.  OB 30.

[59] *Seinfeld*, 909 A.2d at 118 (internal quotation marks omitted).

standard.[60]  A plaintiff must also show that each category of documents sought is "necessary, essential, and sufficient for the shareholders' purpose."[61]

## A. Plaintiff has Shown a Credible Basis to Infer Mismanagement

Plaintiff maintains it has easily satisfied the low threshold of credible basis with both logic and documentary evidence.  The theory of wrongdoing focuses on Redstone's status as a conflicted controlling stockholder who has, for years, been seeking a bailout of the sinking Viacom ship, which she controls, with resources provided by CBS, which she also controls.  According to Plaintiff, Redstone's unrelenting desire to merge the two companies has culminated in a transaction process that was unfair and a transaction result with no economic justification.[62]

As for the logic supporting its claim of wrongdoing, Plaintiff highlights the extraordinary lengths to which the CBS Board was willing to go just one year ago to prevent Redstone from forcing CBS into a transaction with Viacom that was not materially different from the transaction the CBS Board has now approved.[63]  All that has changed, it argues, is the composition of the CBS Board and the replacement

---

[60] *Kosinski*, 214 A.3d at 953; *see Seinfeld*, 909 A.2d at 123 ("Although the threshold for a stockholder in a section 220 proceeding is not insubstantial, the 'credible basis' standard sets the lowest possible burden of proof.").

[61] *BBC Acquisition Corp. v. Durr-Fillauer Med. Inc.*, 623 A.2d 85, 88 (Del. Ch. 1992).

[62] *See* Pl.'s Reply Pre-Trial Br. ("RB") 5–9.

[63] *See* RB 9–11.

of a CEO who resisted Redstone in 2016 and 2018 with a CEO who now answers to her.[64] According to Plaintiff, having found CBS's leadership too independent, Redstone used the fallout from the 2018 Chancery litigation to install leadership at CBS that is more susceptible to her control.[65]

In addition to the basic logic that supports a suspicion of wrongdoing, Plaintiff points to documentary evidence, in the form of CBS's public filings and the documents CBS has already produced for inspection, that supports its stated purpose for inspection. Specifically, Plaintiff focuses on Redstone's participation in the Nominations and Governance meeting on February 22, 2019, where, notwithstanding the Settlement Agreement's prohibitions, it appears Redstone, once again, may have pushed for a Viacom-CBS merger.[66] To accent the point, Plaintiff highlights the abrupt resignation of CBS's Executive Vice President and Chief Legal Officer immediately after this meeting, suggesting he resigned in response to wrongdoing he witnessed.[67]

---

[64] *See* Compl. ¶¶ 35–36. Former CBS CEO Les Moonves was the driving force opposing of the 2018 merger. *See generally* JX 18.

[65] *Id.*

[66] RB 11–12.

[67] RB 12–13.

CBS, not surprisingly, views the evidence differently. It maintains the evidence, both in public filings and internal documents, reveals that it conducted an exemplary process to ensure that independent decision makers negotiated the transaction with Viacom and analyzed the risks and benefits of the transaction from CBS's perspective. In this regard, CBS argues there is no evidence that Redstone dominated or controlled the process or the decision makers.[68] Moreover, CBS maintains the Company's exculpatory charter provision leaves Plaintiff to argue that CBS's Board members breached their duty of loyalty or acted in bad faith.[69] As to this point, CBS argues the mere presence of a controller on both sides of the transaction does not provide a credible basis to infer non-exculpated wrongdoing.[70]

I note, as an initial matter, that CBS's Section 102(b)(7) argument is misplaced. Plaintiff has indicated it may pursue pre-closing, equitable relief.[71]

---

[68] *See* Def.'s Answering Pre-Trial Br. ("AB") 33–36.

[69] *See* AB 30–45. *See* 8 *Del. C.* § 102(b)(7); *Southeastern Pa. Trans. Auth. v. AbbVie, Inc.*, 2015 WL 1753033, at *13 (Del. Ch. Apr. 15, 2015), *aff'd*, 132 A.3d 1 (Del. 2016) ("A stockholder . . . has stated a proper purpose only insofar as the investigation targets non-exculpated corporate wrongdoing.").

[70] AB 32–41.

[71] Compl. ¶ 39; RB 16.

Thus, CBS concedes, as it must, that its exculpatory charter provision would not be relevant if this Court were asked to provide such relief.[72]

Moreover, Plaintiff has presented some evidence to support a credible basis to infer actionable fiduciary duty breaches, satisfying its low burden. *First*, it is undisputed that, by declining to submit the merger to CBS's unaffiliated stockholders for approval, the CBS Board has tacitly agreed to submit the transaction to entire fairness review if challenged.[73] In the Section 220 context, that fact will pique suspicion because it opens the possibility "that the transaction was not at arm's length, less than optimal, and potentially tainted by the undermining influence of a controller."[74] Thus, while declining to allow unaffiliated stockholders to vote on the transaction, without more, is not enough to establish a credible basis to suspect wrongdoing, "[t]here is no reason why [failure to follow the *MFW* road map] cannot contribute to a credible basis."[75] This suspicion is all the more justified here since, contrary to its firm stance in 2018, the CBS Board inexplicably did not even ask to

---

[72] *See* AB 30 n.8; 8 *Del. C.* § 102(b)(7) (extending exculpation only to personal liability for damages).

[73] *Cf. In re MFW S'holder Litig.*, 67 A.3d 496, 502 (Del. Ch. 2013), *aff'd*, *Kahn v. M & F Worldwide Corp.*, 88 A.3d 635 (Del. 2014) (laying out a road map for a board to earn business judgment deference in a controller squeeze-out merger context).

[74] *Kosinski*, 214 A.3d at 954.

[75] *Id.*

condition the 2019 Merger on the approval of the majority of CBS's unaffiliated stockholders.[76]

*Second,* while the terms of the most recent version of the merger do not mirror those of previous versions, there is a credible basis to suspect they are not materially improved from those rejected in 2018.[77] Yet the Board has abruptly changed its position regarding whether a combination with Viacom will benefit CBS and its stockholders. From the perspective of CBS stockholders, a straight line can be drawn between Redstone's previous attempts to merge Viacom with CBS, which CBS maintained just one year ago "presents a significant threat of irreparable and irreversible harm to [CBS] and its stockholders[,]" and the current attempt to combine these companies.[78] This logical nexus is further evidence of wrongdoing.[79]

*Third,* Plaintiff has demonstrated the 2019 Merger may provide Redstone with a nonratable benefit, similar to those the CBS Board found so offensive in 2018 that

---

[76] Tr. 26:1–17. CBS also opposed Bakish leading the combined company in 2018 but has abandoned this position as well. *Id.*

[77] CBS points to what it calls "hard-fought victories" won by the CBS Special Committee with respect to the 2019 Merger. But at least some of these governance protections are short-term and leave open the possibility Redstone will simply wait them out. *See* JX 89 at 3, 5; JX 88 at 2; JX 100 at 47, 51; JX 142 at 9.

[78] JX 12 at 2.

[79] *See Donnelly v. Keryx Biopharmaceuticals Inc.*, 2019 WL 54460115, at *5 (Del. Ch. Oct. 24, 2019) (connecting a prior merger attempt by an allegedly controlling minority blockholder to a subsequent merger when assessing plaintiff's evidence of wrongdoing).

it sought to dilute Redstone's stake in CBS and enjoin the 2018 Merger.[80] Redstone has previously voiced significant concern about Viacom's performance and long-term viability as a standalone company, even going so far as to say it is "tanking."[81] When CBS was considering a transaction with Verizon, Redstone made clear that any potential transaction with CBS "needs to include Viacom[,]" a demand NAI's financial advisors passed on to Verizon.[82] Her repeated pursuits of a merger with CBS give some support to Plaintiff's allegation that Redstone views a CBS-Viacom merger as a bailout of her controlling interest in Viacom. In the context of Plaintiff's low burden here, this is some evidence of possible wrongdoing.

*Fourth,* Plaintiff has introduced documentary evidence that provides a basis to suspect an improper transaction process. For instance, although Redstone is not a member of the Nominating and Governance Committee, she attended that Committee's meeting on February 22, 2019.[83] At this meeting, the committee appears to have discussed with Redstone "strategic possibilities" for CBS and authorized the engagement of Lazard and Centerview to assist in a strategic review.[84]

---

[80] *See Nat'l Amusements*, 2018 WL 2263385, at *1–2.

[81] JX 7.

[82] JX 9; JX 162.

[83] JX 53 at 1.

[84] *Id.* at 2.

Shortly after Redstone left the meeting, the Committee voted to recommend that the CBS Board form the Special Committee. That committee, in turn, almost immediately began negotiating a merger with Viacom . . . again.[85] Of course, the 2018 Settlement Agreement forbid Redstone from in any way proposing or promoting, directly or indirectly, a CBS-Viacom Merger unless two-thirds of CBS's unaffiliated directors *invited* such a proposal.[86] It is certainly reasonable to infer that Redstone recommended the 2019 Merger at the February 22 meeting without an invitation, in apparent violation of the Settlement Agreement, and the other directors, undeterred by the Settlement Agreement or the Board's past opposition to a merger with Viacom, acted swiftly to advance Redstone's wishes.

*Fifth*, Ianniello's conduct during the 2019 Merger negotiations raises suspicions. During the 2018 Merger negotiations, Ianniello was a fierce ally of then-CEO Moonves as he opposed the transaction, leading NAI to name Ianniello as a defendant in its counter-suit against CBS.[87] In the months after the 2018 settlement, Ianniello met with Redstone and soon after changed his position on the merger, becoming one of the most vocal advocates in support of the combination.[88] Plaintiff

---

[85] JX 143 at 81–83.

[86] JX 31 at 5.

[87] *See* JX 18.

[88] JX 143 at 81–82.

notes this change of heart coincides with Ianniello receiving a substantially boosted compensation package, his negotiating a large payout upon completion of the 2019 Merger and his securing a management role with CBS post-merger.[89] Ianniello attended numerous Special Committee meetings and Plaintiff maintains it is fair to infer that he acted as Redstone's surrogate in these sessions.[90] While there are perfectly benign explanations for Ianniello's behavior, the evidence of his rather abrupt change of heart, and personal incentives to back the controller, add to the low quantum of evidence Plaintiff is obliged to muster in order to meet its "credible basis" burden.

*Sixth,* Lawrence Tu's abrupt "for Good Reason" resignation as CBS's Executive Vice President and Chief Legal Officer following the February 22 meeting raises yellow, if not red, flags.[91] Tu's Employment Agreement defines "Good Reason" to include "the assignment [] of duties or responsibilities that . . . materially impair your ability to function as Senior Executive Vice President and Chief Legal officer of CBS[.]" [92] It is reasonable to infer that Tu's resignation was in response to what he saw as a violation of the 2018 Settlement Agreement.

---

[89] RB 28.

[90] *Id.* at 29–30.

[91] JX 54 at 2.

[92] JX 6 at 13.

The totality of these proven facts crosses the low threshold of proving a "credible basis to suspect wrongdoing."[93]  This, coupled with the fact that the 2019 Merger is a conflicted controller transaction that likely will be subject to entire fairness review if challenged, more than adequately supports Plaintiff's proffered purpose for inspection.[94]

## B. Plaintiff is Entitled to the Books and Records that are Necessary and Essential to Fulfill Its Purposes

Having stated a proper purpose, Plaintiff is entitled to all books and records necessary and essential to fulfill that purpose.[95]  "Documents are necessary and essential pursuant to a Section 220 demand if they address the crux of the shareholder's purpose and if that information is unavailable from another source."[96] "The plaintiff bears the burden of proving that each category of books and records is essential to accomplishment of the stockholder's articulated purpose for the inspection."[97]  To meet this burden, Plaintiff must "make specific and discrete

---

[93] *Seinfeld*, 909 A.2d at 123.

[94] *See Kosinski*, 214 A.3d at 953–56 (combining a potentially suspect process followed in a controller transaction with other evidence of wrongdoing to find a credible basis); *Donnelly*, 2019 WL 54460115, at *5 (finding a credible basis to infer wrongdoing where a controller may have engaged in a conflicted transaction).

[95] *Kosinski*, 214 A.3d at 957.

[96] *Wal-Mart Stores, Inc. v. Ind. Elec. Workers Pension Tr. Fund IBEW*, 95 A.3d 1264, 1271 (Del. 2014) (internal quotations omitted).

[97] *Thomas & Betts Corp. v. Leviton Mfg. Co.*, 681 A.2d 1026, 1035 (Del. 1996).

identification, with rifled precision, of the documents sought."[98]  Some, but not all, of Plaintiff's Demand meets this standard.[99]

Plaintiff's request (3) seeks documents reviewed "by the CBS Board in connection with (i) the nomination and appointment of each member of the CBS Board to the special committee for the 2019 Merger; and (ii) the September 9, 2018 meeting" where new directors were added in connection with the Settlement Agreement.[100]  After considering the evidence, I am satisfied Plaintiff is entitled to documents responsive to subpart (i) of this request, but not subpart (ii).  While (i) would allow Plaintiff to gain key insight into the constitution of the Special Committee, it is unclear what information (ii) would provide that Plaintiff could not glean from the already produced director questionnaires.  Stated differently, the documents described in (ii) are not necessary to fulfill Plaintiff's purpose.

---

[98] *Brehm v. Eisner*, 746 A.2d 244, 266 (Del. 2000); *see also Wal-Mart Stores, Inc.*, 95 A.3d at 1283 ("The term 'rifled precision' requires the Court of Chancery to make a qualitative analysis of documents demanded.  'Rifled precision' is not a quantitative limitation on the stockholder's right to obtain all documents that are necessary and essential to a proper purpose.").

[99] As previously noted, CBS has already produced documents responsive to the first two requests in the Demand.

[100] JX 132 at 8.

Request (4) similarly seeks documents that would shed light onto the independence of CBS's directors.[101] These likewise are not necessary and essential to Plaintiff's purpose as it is unclear what information they would provide Plaintiff that it would not already have from the conflict questionnaires.

Plaintiff's requests (5) and (6) seek Board minutes, Board materials and financial advisor presentations from the 2016, 2018 and 2019 Mergers.[102] Plaintiff is entitled to these documents. The wrongdoing Plaintiff has established a credible basis to investigate involves a narrative that directly implicates the 2016 and 2018 merger attempts not as past-tense, isolated events, but as part of a continuing story of misconduct.[103] Given the CBS Board's decisive rejection of these past transactions, and their temporal proximity to the transaction at issue here, documents from the 2016 and 2018 Mergers will provide key information to Plaintiff about whether the 2019 Merger is the product of wrongdoing.

Plaintiff's request (7) seeks expert reports prepared on behalf of CBS in connection with the 2018 Litigation.[104] Plaintiff has not established why these reports would provide necessary and essential information that would not be

---

[101] *Id.*

[102] *Id.*

[103] *See* JX 14–28; Tr. 11:22–26:17.

[104] JX 132 at 8.

provided in the books and records concerning the 2016 and 2018 Mergers. Plaintiff already has (and has relied upon) substantial information from the 2018 litigation; it is unclear why these expert reports, likely subject to work product immunity, would be necessary and essential to fulfill Plaintiff's stated purpose.[105]

Plaintiff's request (8) seeks documents concerning Ianniello's employment and compensation arrangements and his communications with Redstone.[106] Plaintiff is entitled to receive CBS's Board-level documents regarding Ianniello's compensation in the date range described in the Demand. Part of Plaintiff's supported theory of wrongdoing involves Ianniello self-interestedly endorsing the 2019 Merger as Redstone's surrogate after she facilitated substantial compensation and merger-related payments to Ianniello.[107] These documents are necessary to allow a proper investigation of this alleged wrongdoing. Plaintiff is not, however, entitled to the electronic communications sought in this request, at least not in this Section 220 production. The CBS Board-level compensation documents are sufficient to enable Plaintiff's investigative purpose.

---

[105] *See generally* JX 12, JX 14–27 (litigation documents and news reports from the 2018 litigation).

[106] JX 132 at 9.

[107] RB 28–30.

Last, Plaintiff makes a broad demand for inspection of "electronic documents" sent by Shari Redstone or NAI to any CBS or Viacom Board member or their advisors, and vice versa.[108]   As support, it points to language from our Supreme Court's recent decision in *KT4 Partners LLC, v. Palantir Technologies, Inc.,* where the Court reversed the trial court's post-trial finding that the production of emails and text messages was not "necessary and essential."[109]   Plaintiff argues *Palantir* establishes that stockholders have a broad right to inspect electronic documents in response to Section 220 requests.[110]   CBS reads *Palantir* more narrowly.   After considering the evidence here, I am satisfied that I need not undertake a definitive construction of *Palantir*'s guidance with respect to a stockholder's right to inspect a company's electronically stored information in order to address document Categories 9-11.   Plaintiff has asked for *all* electronic communications between Redstone, CBS, Viacom and their directors and advisors.[111]   This broad ranging request is far more appropriate for discovery in a plenary action; it bears little resemblance to the "rifled precision" this Court requires in a Section 220 demand.[112]

---

[108] JX 132 at 9.  This encompasses requests 9–11.

[109] 203 A.3d 738 (2019).

[110] RB 22.

[111] PTO ¶ 14.

[112] *Brehm*, 746 A.2d at 266.

Plaintiff is entitled to inspect a narrow set of electronic documents, however. Plaintiff's credible basis showing includes proof of suspected wrongdoing at the February 22 Nominations and Governance Committee meeting.[113] In order to investigate this alleged wrongdoing further, Plaintiff is entitled to electronic communications between Shari Redstone and the members of the Nominations and Governance Committee fourteen (14) days before and after that meeting. It is also entitled to inspect non-privileged electronic communications from these parties to Lawrence Tu, and vice versa, during that time-span.[114] Plaintiff has met its burden of showing these documents are necessary and essential to its stated purpose.[115]

---

[113] RB 11–13; JX 53.

[114] CBS has argued that Plaintiff's request for documents specifically related to the February 22 meeting was not stated in its Demand and is, therefore, improper. Tr. 81:13–22. I agree that a stockholder may not invent new demands for inspection, not articulated in the demand it sent to the company, during the course of Section 220 litigation. *See In re Facebook, Inc. Sec. 220 Litig*, 2019 WL 2320842, at *17 (Del. Ch. May 31, 2019). But Plaintiff's Demand for electronic documents, at Requests 9–11, is clearly broad enough to capture such documents related to the February 22 meeting.

[115] As noted, the parties dispute, under *Palantir*, who bears the burden of demonstrating that electronic documents should or should not be included in the company's production of books and records in response to a Section 220 demand. *Compare Palantir*, 203 A.3d at 754 (noting that the company had not "buttress[ed] its claims [that the stockholder was not entitled to emails] with any evidence that other materials would be sufficient to accomplish [the stockholder's] purpose"), with *id*. at 756 ("when a [plaintiff] [] reasonably identifies the documents it needs and provides a basis for the court to infer that these documents likely exist in the form of electronic mail the [] corporation cannot insist on a production order that excludes emails even if they are in fact the only responsive corporate documents that exist and are therefore by definition necessary."). Here again, I need not decide who has the better reading of *Palantir* in ordering inspection of this limited set of electronic documents since I am satisfied Plaintiff has demonstrated that Redstone, the Viacom board and the CBS Board communicated by means of text messages and emails

## III. CONCLUSION

For the foregoing reasons, judgment shall be entered in favor of Plaintiff, Bucks County Employees Retirement Fund. Given the exigencies created by the impending closing of the 2019 Merger, the parties shall promptly contact Chambers to arrange a conference to discuss an appropriate implementing Order and Final Judgment.

---

regarding company business and there is an absence of board-level materials relating to this narrow topic. *See* JX 7–9; JX 160–62.